A TO Z RENTAL, INC., a Montana Corporation, Plaintiff-Appellee,

v.

C. Dale WILSON and Keith D. Wilson, d/b/a Fort Collins Rental, Inc., Defendants-Appellants.

A TO Z RENTAL, INC., a Montana Corporation, Plaintiff-Cross-Appellant,

v.

C. Dale WILSON and Keith D. Wilson, d/b/a Fort Collins Rental, Inc., Defendants-Cross-Appellees.

Nos. 147–68, 148–68.

United States Court of Appeals Tenth Circuit.

July 24, 1969.

Rehearings Denied Sept. 2, 1969 and Sept. 9, 1969.

Alden T. Hill, Fort Collins, Colo. (Hill & Hill, Fort Collins, Colo., on the brief), for appellants and cross-appellees.

Bruce Ducker, Denver, Colo. (Seawell, Cohen & Seawell, Denver, Colo., Paul Homer, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., on the brief), for plaintiff-appellee and plaintiff-cross-appellant.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

A to Z Rental, Inc., will hereinafter be referred to as A–Z, and C. Dale Wilson and Keith D. Wilson, collectively, as the Wilsons.

On March 23, 1965, A–Z and the Wilsons entered into a "franchise agreement" by which A–Z granted to the Wilsons "an exclusive * * * license to use the trade name and service mark 'A To Z Rental' * * * in the operation of a rental center to be owned and conducted by" the Wilsons at "819 East Mulberry Street, Fort Collins, Colorado," and the Wilsons agreed to purchase their "initial inventory of rental equipment and supplies" in an amount of not less than $25,000 from A–Z, and to purchase at least 65 per cent of all additional equipment and supplies from A–Z.

The Wilsons purchased their initial inventory from A–Z and paid therefor one-half of the price, which included a payment of $8,237.30 for the exclusive franchise. The Wilsons secured the amount of the unpaid initial inventory and two subsequent inventories purchased from A–Z by conditional sales contracts. A–Z, asserting a default, on February 10, 1967, brought this action to recover possession of the equipment and supplies, and on recovery of such equipment and supplies sold them without a foreclosure proceeding or a court order and then sought a judgment in the action for a claimed deficiency after applying the proceeds of the sale.

The Wilsons filed a counterclaim in which they asserted they were entitled to credits on the conditional sales contracts, not allowed by A–Z, recovery of the amount paid by them for the exclusive franchise, and damages for breaches of the franchise agreement by A–Z.

The court found that the foreclosure sale was caused by A–Z's failure to perform the franchise agreement and the

cost thereof should be borne by A–Z. It found that the only damages recoverable by the Wilsons were $8,237.39 paid by them for the exclusive franchise and $728.60 paid by them as royalties to A–Z, and denied the other damage claims asserted by them. It found after deducting the amount received by A–Z at the sale and $1,295.02 paid as taxes by A–Z, there was due it $4,194.67, leaving a net balance due the Wilsons of $4,771.32, and rendered judgment accordingly. From that judgment the Wilsons have appealed and A–Z has cross-appealed.

In 1957, a limited partnership was organized as "Nation-wide Leasing Company." In 1962, the partnership was converted into a Delaware corporation under the name "Nation-wide Industries, Inc." In August 1964, A–Z, a corporation organized under the laws of Montana, under the name "A to Z Rental Equipment, Inc.," was authorized to do business in Colorado. In October 1964, Nation-wide acquired all the stock of A–Z in exchange for common stock of Nation-wide. On August 3, 1965, the name of the Montana corporation was changed to "A To Z Rental, Inc."

In the earlier transactions between the Wilsons and A–Z, the name "A To Z Rental Equipment Company" was used by A–Z.

At the time A–Z was acquired by Nation-wide, A–Z had 65 retail outlets, five of which were owned and operated by it, and 60 of which were owned and operated by others under franchises from it.

The principal business of A–Z is to grant franchises to persons by licensing agreements to use its name and system in the operation of rental centers for the rental of many kinds of equipment for housewives, sportsmen, and contractors, and of do-it-your-self aids, and to sell its licensees equipment and supplies needed in their rental businesses.

Under the leasing agreement, the franchised licensee agrees to purchase 100 per cent of his first inventory of equipment and supplies and 65 per cent of his subsequent inventory of equipment and supplies from A–Z.

In some circumstances, A–Z finances the licensee or obtains financing for him.

At all times here material, the Wilsons were residents of Colorado. They entered into three licensing agreements with A–Z for the operation of a rental business at Fort Collins, Colorado. The second agreement superseded the first, and the third agreement superseded the second.

The first licensing agreement entered into between A–Z and the Wilsons was dated October 30, 1964. It granted to the Wilsons "a non-exclusive franchise to * * * use the 'A to Z RENTAL EQUIPMENT' system and name" in the operation of their rental business at Fort Collins, Colorado. At the time it was entered into, the Wilsons paid A–Z $500 in cash.

The second agreement also granted to the Wilsons a non-exclusive franchise to use such name and system. It was entered into on November 5, 1964, but dated October 30, 1964, because Glenn Mercer, the representative of A–Z in the negotiations for the franchise and the licensing fee, told the Wilsons if that was not done that they would operate under a new franchise, identified as an "A" franchise, which required a much larger purchase fee and a royalty of two per cent on the gross business of the licensee during the life of the franchise.

At the time the second franchise was entered into, the Wilsons paid A–Z $7,-500.

The third franchise agreement, which superseded the two previous agreements, recited that it was entered into on February 17, 1965. However, it also recited that it should "not become effective or binding upon" A–Z "until executed at the principal operating office of" A–Z in Chicago, Illinois. It was not signed by the Wilsons until about the middle of March 1965 and was executed by A–Z by Raymond V. Gregg, as its vice-president, on March 23, 1965. On that date it was mailed to the Wilsons, with a covering letter stating that it had been executed by A–Z.

At the beginning of the negotiations, it was contemplated that the Wilsons would obtain needed financing through the Small Business Administration, but that plan was abandoned and the Wilsons obtained financing from another source.

The third agreement bore the heading, "A to Z Rental, Inc. Franchise Agreement." It granted to the Wilsons "an exclusive, non-transferable and personal license to use the trade name and service mark 'A To Z Rental' and the phrase 'Tools and Equipment for Work and Play.'" It required the Wilsons to purchase from A–Z an "initial inventory of rental equipment and supplies" for the rental center of $25,000, "based on" A–Z's "prices for original inventory." It provided that concurrently with or prior to the execution of the agreement, the Wilsons would order from A–Z such original inventory and satisfy A–Z with respect to the financing thereof; that the Wilsons would purchase from A–Z a minimum of 65 per cent of all additional equipment and supplies purchased by them for their rental center; that A–Z would furnish and the Wilsons would use forms and systems of records and controls; that A–Z would assist the Wilsons in selecting a location and in the selection of its inventories, and would provide guidance and training in the operation of the rental center. However, the only advice and consultation given to the Wilsons by A–Z was with reference to bookkeeping.

The third agreement put many restrictions and requirements on the Wilsons with respect to the operation of their business.

The Wilsons began negotiations with A–Z for a franchise in September 1964, in response to a newspaper ad.

On September 21, 1963, James Furrow commenced operating a rental business in Fort Collins, Colorado, and continued to operate the same until on and after January 1, 1967, under the name "A–Z Rents It."

The matter of Furrow's operating his business under the name "A–Z Rents It" came up for discussion between the Wilsons and Mercer in the latter part of September 1964 and Mercer stated that A–Z would make Furrow change his trade name by the time the Wilsons opened their rental business. On October 30, 1964, the Wilsons again raised the name problem and Mercer stated the Wilsons would have no problem with the name, that it was their (A–Z's) problem, and that the Wilsons were not concerned with it and would open their doors under the name "A To Z Rentals."

On November 5, 1964, Shirley Wilson, wife of Dale Wilson, asked Mercer, "What about this rental store in Fort Collins using the name 'A–Z Rents It?'" and Mercer replied, "This is not your problem, it is ours. This is a franchise. We have a patent on the name. We will take care of it." After such assurance, the Wilsons gave A–Z their check for $7,500, dated back to October 30, 1964, at Mercer's suggestion and in order, as stated by him, to take advantage of the terms of the original franchise agreement.

Again, in December 1964, before a 10-year lease was signed by the Wilsons for a building and grounds to be occupied by the rental center, A–Z represented to the lessor and the Wilsons that they would have the only "A To Z Rental" name in Fort Collins, and Mercer assured the lessor that A–Z would take care of that problem. The lease was executed February 1, 1965.

About March 19, 1965, the Wilsons received from John R. Titlow, vice-president of A–Z, a letter dated March 17, 1965. Before the Wilsons signed and returned a copy of that letter, Keith D. Wilson had a telephone conversation with Titlow. The latter asked Keith if the Wilsons had signed the letter. They had not then signed it. Keith asked Titlow when the Wilsons would get the right to use the name "A To Z Rental" in the operation of their rental center at Fort Collins. Titlow replied that within six months from that time they would have the right so to use such name. There-

upon, the Wilsons signed the letter and mailed it to A–Z at its Chicago office.

The Wilsons signed the third franchise agreement about the middle of March, but it was not signed by A–Z or effective until March 23, 1965.

Early in February 1965, at A–Z's suggestion, the Wilsons acquired a truck and had the name "A to Z Rentals" painted thereon. They also painted a sign with that name on it and put it up at the place where their rental center was to be located. The following week, the Wilsons received a letter from an attorney for Furrow, stating that Furrow had a common law right to the name "A To Z" and if the Wilsons undertook to use it, Furrow would sue them for infringement and seek injunctive relief. The Wilsons immediately went to A–Z's office in Denver and showed Mercer the letter. Mercer told them "not to worry about it"; that it would be "taken care of by the office in Chicago."

In the letter of March 17, 1965, to the Wilsons from Titlow, it was suggested that the Wilsons open their business in a name other than "A To Z Rental" and at such time as A–Z cleared up the question of possible conflict in names, the Wilsons reconvert to the name "A To Z Rental." He agreed to reimburse the Wilsons for conversion of their signs, rental contracts, and promotional material to the franchised name.

The Wilsons acceded to the suggestion and opened their business in the name "Fort Collins Rental Inc." on May 15, 1965.

The opening by the Wilsons of their rental center under a different name, at A–Z's suggestion, was done by them after repeated assurances from A–Z that it would obtain for them the right to use the franchise name "A To Z Rental" granted them by the third franchise agreement, and was done in reliance upon the assurance by A–Z that within a reasonable time, which A–Z's representative stated would not exceed six months from March 1965, the Wilsons would have the exclusive right to use the franchise name in Fort Collins.

The use of another name by the Wilsons was obviously intended to be a temporary use, and they did not, by using such other name or otherwise, waive their right under the third contract, which did not go into effect until March 23, 1965, to the exclusive use of such franchise name, and the court so found.

In a letter dated July 12, 1966, from Dale Wilson to A–Z, he complained that A–Z promised in March 1965 to clear the name matter up in six months or less and yet nothing had been done by A–Z and six months of 1966 had gone by. Still, A–Z took no affirmative action to clear up the name problem.

The evidence disclosed that A–Z did nothing to clear up the matter of the name problem, did not contact Furrow with respect thereto, and on October 10, 1966, A–Z finally admitted it could not obtain the right for the Wilsons to use the name "A To Z Rental" in Fort Collins. The representative of A–Z stated to the Wilsons, "We feel we have a moral obligation to you, but you do not have a legal hold on us."

The Wilsons continued to operate the rental business from October 11, 1966, to January 1, 1967, without the use of the name "A To Z Rental." The business was not successful. Repeated requests to A–Z to do something to help remedy the situation brought no results. Finally, on January 1, 1967, because of continuing operating losses, they discontinued the operation of their rental center.

The Wilsons purchased a $25,000 opening inventory from A–Z. That price included a markup of $8,237.39, representing the franchise or startup fee. They also paid the balance of one-half of the $25,000 in cash and agreed to pay the remainder of $12,500, plus a $5,000.20 financing fee, which was in fact prepaid interest, in monthly installments over a period of 60 months, beginning July 1, 1965. The deferred payments were secured by a conditional sales contract covering the items in the inventory. There was a long delay by A–Z in the delivery of the items of the opening inventory. The first items were received on April

10, 1965, but some of them were not delivered until September 1965. Such delay caused the Wilsons to delay opening the business until May 15, 1965. They were ready to open it in a trailer prior to that date.

After opening the rental store, the Wilsons purchased additional items of inventory from A–Z on a time basis and secured the payments and the financing price differential by conditional sales contracts.

In addition to its failure to secure for the Wilsons the right to use the name "A To Z Rental," A–Z gave the Wilsons none of the advice and aid with respect to operation of the business provided for in the 1965 franchise agreement, except some advice with respect to bookkeeping.

The Wilsons paid A–Z $728.60 in gross royalties for the right to use the name "A To Z Rental," which right they never received.

The Wilsons suffered an operating loss of $2,669.90, after wages paid to themselves of $4,549.82 in 1965, and an operating loss of $1,524.79, after wages paid to themselves of $5,332.46 in 1966.

The Statement of Realization and Liquidation for the Wilsons' business showed the following claimed losses, based on book value:

| | |
|---|---|
| A loss on sale of rental inventory of | $9,321.81 |
| A loss on sale of fixtures of | 1,189.73 |
| A loss on abandonment of fixtures of | 60.50 |
| A loss on the sale of the van of | 234.22 |

The Wilsons also claimed a loss on prepaid interest of $3,770.17.

The Wilsons also asserted a claim for loss of profits. In support thereof, they relied on the testimony of Mercer, called as a witness for A–Z. On cross-examination, Mercer identified the Wilsons' Exhibit 3. It was a statement put out by A–Z and was shown to the Wilsons by Mercer. It purported to show on an inventory of $27,000 the gross income that would be realized in one year, itemized in some detail to show the sources thereof, and also showed the expenses itemized in great detail and a net operating profit after depreciation of $16,553.12. Mercer testified he gave a copy of Exhibit 3 to the Wilsons and told them the rental income norm from a rental of equipment business was $1.50 per year for each dollar invested in inventory. He further testified that he gave them Exhibit 3 for the purpose of having them act thereon in determining whether to enter into a franchise agreement with A–Z. He told the Wilsons their store at Fort Collins would do as well as the operation shown on Exhibit 3 and possibly would do better. The expense portion included an item of $5,326.88 for wages.

A–Z obtained possession of all the rental property of the Wilsons covered by the conditional sales contracts by a writ of replevin issued in the instant case, and sold it for less than the unpaid balance on such contracts. The sale was made without court order and was made upon a very brief ad run in the Fort Collins Coloradoan for 10 successive days.

In the instant action, A–Z alleged that there was due it on the conditional sales contracts $14,999.65 for principal and accrued interest; that the contracts provided in case of default that interest on amounts due of one and one-half per cent should be paid and for a late payment charge of five per cent on all amounts in arrears, and that there was due it a late payment charge of $123.08, in addition to the amount above stated. It prayed for a judgment of $15,122.74, plus attorneys' fees and costs.

The property covered by the conditional sales contracts was sold by A–Z to Furrow for $12,100. A–Z paid taxes amounting to $1,295.02, which were a prior lien on the property, from the proceeds of the sale, leaving a net credit for the Wilsons of $10,804.98.

A–Z sought a deficiency judgment for the balance due, together with court costs, costs of sale, interest, and attorneys' fees.

The trial court held that under the franchise agreement of March 23, 1965,

A–Z granted to the Wilsons and the Wilsons were entitled to receive an exclusive license to use the service mark "A To Z Rental"; that the contract was not modified by the letter of March 17, 1965, from Titlow to the Wilsons; that the understanding between the parties was that the Wilsons would open their business under a different name, temporarily only; that A–Z would obtain the right for the Wilsons to use the trade name, and thereupon the Wilsons would change the business name to "A To Z Rental." The court further held that the principal inducement to the Wilsons to enter into the franchise agreement and to agree to purchase their equipment and supplies from A–Z was the latter's grant to the Wilsons of the exclusive right to use the name "A To Z Rental"; that A–Z knew that the Wilsons expected to realize a profit from the business, and that such profit would largely be attributable to the "A To Z" service mark.

A–Z contends the letter from Titlow to the Wilsons modified the franchise contract of March 23, 1965. Such letter was dated March 17, 1965, and was received by the Wilsons March 19, 1965. With such letter Titlow enclosed a copy of an A–Z "A" franchise agreement, which was identical with the third franchise agreement thereafter entered into between A–Z and the Wilsons. Titlow suggested that there were many advantages that would accrue to the Wilsons if they entered into an "A" franchise agreement, and stated "the thought" occurred to him that they might want to convert to the "A" franchise agreement.

The Wilsons had already received two copies of the "A," the third franchise agreement, and had signed them about the middle of March 1965, after Titlow had promised them they would have the right to use the name "A To Z Rental" within six months from March 19, 1965. A short time thereafter, they mailed the signed contracts to A–Z at its Chicago office, but it is apparent they had not been received by A–Z when Titlow wrote the letter of March 17, 1965, and were not signed by A–Z until March 23, 1965.

Such "A" franchise agreement was the final agreement between A–Z and the Wilsons. It made no reference to the Titlow letter and was finally executed and became effective after Titlow's letter was written and received by the Wilsons. Under ordinary contract law, that letter and all other prior negotiations merged in the third franchise agreement, and it became the final and complete agreement between the parties.

However, in accordance with A–Z's suggestion, the Wilsons opened their rental center on May 15, 1965, under a different name than "A To Z Rental," but it was clearly contemplated by the Wilsons and by A–Z, if we assume Titlow's promise was made in good faith, that the Wilsons would have the right to use the name "A To Z Rental" within a reasonable time, not to exceed six months from March 19, 1965, and would convert to the name "A To Z Rental" and that A–Z would pay the expenses of changing the name to "A To Z Rental." So, whether the Titlow letter of March 17, 1965, did or did not modify the third franchise agreement is of little moment. The fact is that A–Z sold to and received payment from the Wilsons for the exclusive right to use the name "A To Z Rental" in the operation of their rental center in Fort Collins, and A–Z repeatedly promised and assured the Wilsons they would receive that right. A–Z wholly failed to carry out its contract and there was a complete failure of consideration for the $8,237.39 paid by the Wilsons for such exclusive right and the $728.60 paid by them as royalties for such use.

The trial court held that the default in payment by the Wilsons of the conditional sales contracts balance was due to the breach of the franchise agreement of March 23, 1965, by A–Z, and was caused by the failure of A–Z to secure the right of the Wilsons to use the name "A To Z Rental," and denied recovery by A–Z of the costs of sale.

The court held that the Wilsons were entitled to recover on the counterclaim the $8,237.39 paid for the exclusive franchise, because of the failure of A–Z to

obtain the exclusive right granted by A–Z to the Wilsons to use the trade name "A To Z Rental" in Fort Collins, and $728.60 paid to A–Z by the Wilsons for royalties.

The court denied the Wilsons' claim for prospective profits on the ground they were speculative. The result was a judgment in favor of the Wilsons for $4,771.-32, with costs, with interest thereon at six per cent per annum from the entry of the judgment on May 20, 1968.

The court denied the Wilsons' claim for salaries, prepaid and unaccrued interest, loss of profits, and interest paid on money borrowed by them and invested by them in the business, and interest on the amount found to be due them from the date of the breach to the date of the judgment.

The instant action was commenced on February 16, 1967. Thereafter, on March 28, 1967, A–Z commenced an infringement action against Furrow, in which it claimed a prior right to use the service mark "A To Z" in conducting the business of renting tools and equipment and licensing others to use such service mark in conducting such businesses; and that Furrow was infringing such mark by carrying on the business of renting tools and equipment in Fort Collins, Colorado, under the name "A–Z Rents It."

It sought an injunction against the use by Furrow of the name "A–Z Rents It," or any other mark confusingly similar.

In his answer, Furrow claimed the prior right to use the name "A–Z Rents It" in Fort Collins, Colorado, and set up other defenses by way of laches and estoppel and also interposed a counterclaim seeking relief from A–Z for claimed infringement of its trade name "A–Z Rents It" by A–Z and its licensees.

Before the trial of the instant action, on or about September 26, 1967, A–Z and Furrow reached a compromise agreement settling that action, under which, in consideration of the payment of $6,000 by A–Z to Furrow, the latter granted and assigned to A–Z his entire right, title, and interest in and to the trademarks and trade names "A–Z," "A To Z" and "A–Z Rents It." At the same time, A–Z, by written contract, granted to Furrow for a term of 30 years a royalty-free license to use the service marks "A–Z" and "A To Z" and the trademark "A–Z" and the trade name "A–Z Rents It" in the operation of Furrow's rental facility for the rental of tools, equipment and vehicles, and related sales of goods at 423 Canyon Avenue, Fort Collins, Colorado, and such other locations at which Furrow might conduct his rental business within a circle with a radius of 10 miles from its center point at 423 Canyon Avenue, Fort Collins, Colorado. By such contract, A–Z agreed not to grant any other license to operate within the prescribed territory a rental facility under the service marks "A–Z" and "A To Z," the trademark "A–Z," the trade name "A To Z Rents It," or any other marks or names confusingly similar thereto.

A–Z further agreed not to operate or license any rental facility under such trademark or name in Loveland, Colorado, at a location any closer than its then rental facility in Loveland.

On September 26, 1967, upon the execution of the assignment from Furrow to A–Z and the license back to Furrow, a consent decree was entered in the suit by A–Z against Furrow, enjoining Furrow from using the words or names "A–Z" and "A–Z Rents It," or any confusingly similar names. No costs were taxed. Of course the judgment was not the result of an adversary trial and was a part of the compromise settlement under which Furrow received $6,000 in cash and a royalty-free license to use the service marks "A–Z," "A To Z" and "A–Z Rents It" in the territory described in the license; and such judgment in nowise militated against the Wilsons' claim that A–Z could not, and admitted it could not, obtain for them the right to use the trade name "A To Z Rental" in the operation of their rental center in Fort Collins.

As a matter off act, A–Z, because of its license to Furrow, could not have given, after the compromise, an exclusive right to the Wilsons to use the trade name "A To Z Rental," as it contracted to do by the third franchise agreement. Moreover, it is fairly obvious that A–Z could not have obtained the compromise with Furrow without paying him the $6,000 and granting the 30-year, royalty-free, exclusive license.

■ For a breach of contract, compensatory damages should be such as will place the injured party in the same financial position in which he would have been, had the contract not been breached.[1]

■ When the cause and existence of damages have been established with the requisite certainty, recovery will not be denied because the amount of such damages is difficult of ascertainment.[2]

■ The rule which precludes the recovery of uncertain damages applies to those that are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect to the amount.[3]

In Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, at 265, 66 S.Ct. 574, at 580, 90 L.Ed. 652, the court said:

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."

■ A person who has broken a contract will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. A reasonable basis for computation and the best evidence obtainable under the circumstances of the case and which will enable the trier of the facts to arrive at a fairly approximate estimate of the loss is sufficient.[4]

The principles stated are in accord with the great weight of authority and are settled law in Colorado.[5]

Here, there can be no doubt that A–Z, for a very substantial consideration, agreed to provide the Wilsons with the exclusive right to use the trade name and service mark "A To Z Rental" and the phrase "Tools and Equipment for Work and Play" in the operation of a rental center by them in Fort Collins, Colorado, and that it wholly breached that agreement. Nor can there be any doubt the Wilsons suffered substantial damages caused by and definitely attributable to such breach.

■ The license granted by the third contract was nontransferable and personal. It could only be obtained from A–Z. It had no market value other than the price fixed and charged for it by A–Z. Since there was a complete failure of the consideration paid by the Wilsons to A–Z for such exclusive right, we think, under the existing circumstances, the price A–Z charged for such right is the best evidence of its value and fully supports the award which the trial court gave the Wilsons for such breach.

1. Woodburn Brothers v. Erickson, 10 Cir., 230 F.2d 240, 242; Baer Bros. Land & Cattle Co. v. Palmer, 10 Cir., 158 F.2d 278, 280; Taylor v. Colorado State Bank, Colo., 440 P.2d 772, 774; Fort v. Brighton Ditch Co., 79 Colo. 462, 246 P. 786, 787.

2. Hoffer Oil Corporation v. Carpenter, 10 Cir., 34 F.2d 589, 592.

3. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S. Ct. 248, 75 L.Ed. 544; Indian Territory Illuminating Oil Co. v. Townley, 10 Cir., 81 F.2d 159, 160.

4. Hoffer Oil Corporation v. Carpenter, 10 Cir., 34 F.2d 589, 592; Vanguard Ins. Co. v. Connett, 10 Cir., 270 F.2d 868, 870; T. F. Scholes, Inc. v. United States ex rel. H. W. Moore Equipment Co., 10 Cir., 295 F.2d 366, 369, 370.

5. Peterson v. Colorado Potato Flake & Mfg. Co., Colo., 435 P.2d 237, 239, 240; Riggs v. McMurtry, 157 Colo. 33, 400 P. 2d 916, 919; Donahue v. Pikes Peak Automobile Co., 150 Colo. 281, 372 P.2d 443, 446, 447.

We think the Wilsons also were clearly entitled to the refund of $728.60 of royalties paid for the exclusive right to use the name "A To Z Rental," which right they were never able to obtain.

We also think the Wilsons suffered very substantial damages in operating losses and loss of profits, definitely attributable to the operation of their rental center in a name other than "A To Z Rental", that they were fully justified in opening their business under another name by the repeated assurances from A–Z that it would obtain for them the exclusive right to use the name "A To Z Rental" and by A–Z's final promise to obtain it by mid-September 1965; and that the Wilsons were justified in continuing the business until January 1, 1967, in an effort to make it successful.

There was no evidence that the operating losses and loss of profits suffered by the Wilsons were in any way attributable to a failure on their part to properly operate the rental center. They had a large investment in the business and owed substantial amounts for borrowed funds and for unpaid inventories and they had a right to continue for a reasonable time efforts to make the venture successful. It is true that the amount of such damages was difficult to ascertain, but we think Exhibit 3, which Mercer furnished to the Wilsons, and his statement to the Wilsons as to the recognized norm return from such rental operation and that their store in Fort Collins would do as well and possibly better than the operation shown on Exhibit 3, on all of which the Wilsons relied and which A–Z at no time repudiated, provided a reasonable basis for computing such damages and one that would enable the trier of the facts to arrive at a fairly accurate estimate of such damages.

Wages paid the Wilsons were reasonable in amount and properly deductible in arriving at the operating loss. In Exhibit 3, which covered a year of opera-tion, a wage deduction of $5,326.88 was included as an item of operating expense.

However, since the Wilsons acquiesced in operating their rental center under the third franchise agreement, under another name until September 19, 1965, we think their recoverable losses should be limited to the period September 19, 1965, to January 1, 1967.

The Wilsons were also entitled to a credit on the balance due A–Z for inventories for precharged and unaccrued interest.[6]

The conditional sales contracts were security devices to secure the payment of the balance owing A–Z on inventories by the Wilsons. The Wilsons defaulted in the installment payments provided for in such contracts and A–Z had the right to enforce such contracts, as provided for therein, on such default. The fact that A–Z was liable to the Wilsons for damages not liquidated and less in amount than the balance owing by the Wilsons to A–Z on such conditional sales contract did not preclude A–Z from exercising its right to realize on its securities. The Wilsons did not seek postponement of the sale.

Where a security holder, proceeding as permitted by the security instrument, secures possession of the security and sells it at a private forced sale, he should exercise due diligence to get the best price obtainable at such a sale, and if he fails so to do and sells the security for less than he could have obtained by the exercise of such diligence, he is liable to the debtor for the difference between the price obtained and the price he could have obtained by the exercise of such diligence. The damages are not measured, as the Wilsons contend, by the difference between the price obtained and the book value of the security. There is evidence in the record which indicates that A–Z may not have exercised such diligence in the sale of the security. We think the court should give

6. Illinois Steel Co. v. O'Donnell, 156 Ill. 624, 41 N.E. 185;

Associates Discount Corp. v. Solar, La. App., 209 So.2d 127, 132.

further consideration to this matter on a retrial, which we shall order. Subject to a possible reduction for the possible failure of A–Z to use such diligence in the making of the sale, we think it was entitled to recover the expenses of the sale and reasonable attorneys' fees for services rendered in obtaining possession of the inventory items and directly connected with the sale thereof. It is not entitled to recover attorneys' fees for services rendered in defending the counterclaim of the Wilsons.

We have considered the other contentions made by A–Z and the Wilsons and find them without merit.

The cause is remanded, with instructions to vacate the judgment, grant a new trial, and proceed in accordance with the views herein expressed.