**CARRIAGE BAGS, LTD., d/b/a Gem Bags, Plaintiff,**

v.

**AEROLINAS ARGENTINAS, Defendant.**

Civ. A. No. 80–K–1249.

United States District Court,
D. Colorado.

Sept. 23, 1981.

Mark Wm. Hofgard, Boulder, Colo., for plaintiff.

W. David Pantle, Joseph J. Bronesky, Sherman & Howard, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this diversity action plaintiff alleges that its agent contracted with an agent of defendant for the shipment of 64 cartons of leather goods, valued at $25,787, from Denver to Bogota, Colombia. Plaintiff further alleges that the goods were either not delivered to its consignee in Bogota or were refused by her, and that defendant then negligently lost the goods. Plaintiff seeks $90,000 in damages for the value of the goods and lost profits.

This action is currently before me on two motions. Defendant moved *in limine* for the exclusion at trial of all evidence of damages relating to plaintiff's loss of gross profits. Plaintiff moved for summary judgment. Briefs, affidavits and a deposition have been filed and both motions are now ripe for determination. I deny both motions.

Defendant bases its motion *in limine* on two alternate grounds. It first asserts that the terms of the air waybill on which the leather goods were shipped limit defendant's liability to the declared value of the goods, $25,787. Defendant then asserts that, even if the liability limitation is not applicable, plaintiff's damages should still be limited to the net profits, rather than the gross profits, lost because of defendant's alleged negligence. Plaintiff, on the other hand, argues that neither of these limitations is applicable here.

Plaintiff's summary judgment motion asserts that defendant wrongfully failed to deliver the consigned goods to the consignee and failed to collect C.O.D. charges and customs duties from consignee. The motion also asserts that defendant failed to return the goods to plaintiff. Plaintiff seeks $90,000 in damages, alleging that defendant's conduct caused plaintiff to lose $25,787 and that the loss of the use of these funds caused plaintiff to lose further profits, the total loss exceeding $90,000.

Because these two motions have intertwined issues, I consider them together.

## I. LIMITATION OF LIABILITY

### A. *Applicability of the Warsaw Convention*

■ Because this case involves international transportation of goods by air between the United States and Colombia, the Convention for the Unification of Certain Rules Relating to International Transportation by Air (Warsaw Convention), 49 Stat. 3000 (1934), applies.[1] *Id.* Art. 1(1). However, the provisions of the convention limiting defendant's liability apply only if the air waybill contains

a statement that the transportation is subject to the rules relating to liability established by [the] convention.

*Id.* Art. 8(q), 9.

The front of the air waybill states:

If the carriage involves an ultimate destination or stop in a country other than the country of departure the Warsaw Convention may be applicable and the Convention governs and in most cases limits the liability of carriers in respect of loss of or damages to cargo.... (SEE CONDITIONS ON REVERSE HEREOF)

and

The shipper certifies that the particulars on the face hereof are corrects (sic) and

agrees to the CONDITIONS ON REVERSE HEREOF.

This second statement is followed by a space for the signature of the shipper or its agent. Both of these signature spaces are still blank.

■ Several conditions of contract are listed on the back side of the waybill. Condition 2.a) states,

Carriage hereunder is subject to the rules relating to liability established by the [Warsaw] Convention, unless such carriage is not international carriage as defined by the Convention.

The liability-limitation provisions of the convention will apply if, and only if, the waybill contains the statement required by articles 8(q) and 9. I find that the statement on the front of the waybill, that the "Warsaw Convention may be applicable" is insufficient to meet the requirements of articles 8(q) and 9.

The statement called for by [art.. 8(q)] is given great importance by the provision of Article 9 that if the carrier accepts goods without an agreement from the shipper that liability is limited, he is not entitled to the provisions of the Convention limiting liability. We think a shipper is entitled, under the Convention, to have his attention called, in understandable language, to this important waiver of what would, at least in this country, be his rights in the absence of the waiver.

*Flying Tiger Line, Inc. v. United States*, 170 F.Supp. 422, 424 (Ct.Cl.1959).

■ If plaintiff or its agent had signed the space on the front of the waybill agreeing to the conditions of contract on the back of the waybill, then condition 2.a) would satisfy the requirements of articles 8(q) and 9 of the convention. Because this space is still blank, the inquiry must be deeper.[2]

---

1. The Montreal Interim Agreement (published at 31 Fed.Reg. 7302 (1966)) modified the Warsaw Convention. The modifications, which relate to personal injuries, are not applicable here.

2. Defendant argues that when Rosalie Kent, a Burlington Northern employee, signed the way-

bill under the blank for the carrier, she was in fact acting as an agent for both plaintiff and defendant. In support of this argument defendant cites the "Shipper's Export Declaration," where plaintiff's agent authorized Burlington Northern "to act as forwarding agent for export control and customs purposes." Defendant's argument is without merit. Plaintiff au-

The law governing bills of lading is instructive. Most courts have held that,

> a shipper who receives a bill of lading without objection after an opportunity to inspect it, and permits the carrier to act on it by proceeding with the shipment, is presumed to have accepted it as correctly stating the contract and to have assented to its terms.

13 Am.Jur.2d, Carriers § 273 (1964). In this case, however, the waybill did not state on its face that the conditions printed on the back were part of the contract; it only had a blank where the shipper could so agree. It is therefore not obvious that plaintiff assented to the terms on the back. On the other hand, plaintiff's agent's actions may have demonstrated to defendant's agent that plaintiff assented to the conditions, even though no one signed the blank. See *id.* §§ 273, 274. I hold that the conditions on the back of the waybill, including condition 2.a), are incorporated into this contract only if defendant can prove that plaintiff or its agent assented to their inclusion.[3] If defendant fails to meet this burden, then the liability-limitation provisions of the Warsaw Convention will not apply.

### B. The Liability Limitation of Condition 4.c)

■ Condition 4.c), on the back of the waybill, provides:

> The charges for carriage having been based upon the value declared by shipper, it is agreed that any liability shall in no event exceed the shipper's declared value for carriage stated on the face hereof,

and in the absence of such declaration by shipper liability of Carrier shall not exceed 250 such French gold francs or their equivalent per kilogram of goods destroyed, lost, damaged or delayed; all claims shall be subject to proof of value.

Defendant argues that this provision limits its liability to the declared value of the goods, $25,787. Because this condition is situated similarly as Condition 2.c), which I just considered, I hold that defendant must likewise prove that plaintiff or its agent assented to its inclusion before it will apply here.

### II. ALLOWABLE DAMAGES

In addition to the value of the lost goods, plaintiff's alleged damages also include lost profits. Plaintiff argues that, but for defendant's actions, plaintiff would have had an additional $26,000 capital after selling the lost goods to buy additional goods for resale. Utilizing different theories,[4] plaintiff then argues that it could have sold these goods at a profit, bought more goods, sold them at a profit, and that it consequently lost at least $90,000. Defendant's motion *in limine* seeks to have damages limited to net profits, rather than gross profits.[5]

■ I first must determine what law governs the damage question.[6] In this diversity action, I must apply Colorado choice-of-law rules. Colorado has adopted the Restatement Second, "most significant relationship" approach for both tort and contract actions. *Wood Brothers Homes,*

---

thorized Burlington Northern to be an agent for limited purposes, which did not include assenting to conditions of carriage.

3. Art. 11(1) of the Warsaw Convention states that the "air waybill shall be *prima facie* evidence of the conclusion of the contract . . . and of the conditions of transportation. Contrary to defendant's assertion, I find that this provision does not make the conditions on the reverse of the contract *prima facie* evidence of conditions of contract when the air waybill's terms only incorporated the conditions if the parties explicitly agreed to do so.

4. Plaintiff's president testified at deposition that he could have "turned" the goods at least 12 times during two years, each time at a 45–55% gross profit, and that this yielded a

minimum damage figure of $90,000. Milliken Deposition, p. 79. In his affidavit accompanying plaintiff's motion for summary judgment he stated that he could have sold the goods at twice their wholesale value and then repeated this process once, yielding a loss of over $90,000.

5. Defendant argues further that, because plaintiff has never made any net profits, the loss of gross profits and working capital is irrelevant and therefore should be excluded under F.R. Evid. 401.

6. Both parties apparently implicitly assume that Colorado law governs.

*Inc. v. Walker Adjustment Bureau*, Colo., 601 P.2d 1369 (1979); *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973). For contract actions, Rest.2d, Conflict of Laws § 188 lists several contracts that are to be taken into account in determining the applicable law:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

I conclude that Colorado law should be applied under this test. The contract was negotiated and executed in Colorado. Performance was to begin in Colorado. One party was a Colorado corporation, the other party did business in Colorado, through its agent, which led to the formation of the contract.

For tort actions, Rest.2d, Conflict of Laws § 145 lists the contacts to be taken into consideration:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Although the alleged negligence took place in Colombia, the other factors all point to Colorado. Further, *id.* § 6(g), "ease in the determination and application of the law to be applied," points to Colorado law. Colorado law should therefore be applied to the damage issues on both the contract and tort claims.[7]

■ Defendant cites *Lee v. Durango Music Co.*, 144 Colo. 270, 278, 355 P.2d 1083, 1087 (1960), in support of its argument that damages should be limited to lost net profits. Plaintiff, on the other hand relies on *A to Z Rental, Inc. v. Wilson*, 413 F.2d 899, 908–09 (10th Cir. 1969) (applying Colorado law), in arguing that gross profits should be recoverable. I hold that damages should not be calculated after attempting merely to find the proper label, but

> should be such as will place the injured party in the same financial position in which he would have been, had the contract not been breached.

*Id.* at 908 (citations omitted). If plaintiff's overhead costs were totally eliminated because of defendant's alleged breach, then lost net profits would be the proper measure of damages; if overhead remained unchanged, then lost gross profits would be the proper measure. In most cases the proper measure of damages will be somewhere in between these two extremes.

■ Although it is clear that defendant's motion *in limine* must be denied, I feel that it is appropriate at this time to clarify the proper measure of damages. Because damages "may not be speculative, remote, imaginary, or impossible of ascertainment," *Lee v. Durango Music Co.*, 144 Colo. at 278, 355 P.2d at 1087, plaintiff must prove his alleged loss of gross profits (less expenses saved) to a reasonable degree of certainty. A bare allegation by its president is not sufficient. To recover beyond the value of the lost goods, plaintiff would also have to prove that it could not have mitigated its damages from defendant's alleged breach. In particular, to recover for damages stemming from lost capital, plaintiff must demonstrate that it could not have mitigated this loss by borrowing.[8]

### III. SUMMARY JUDGMENT

■ As I have already stated, there are too many disputed facts for plaintiff to be entitled to recover damages for lost profits on this motion for summary judgment. I

---

**7.** To the extent the Warsaw Convention applies, it supersedes Colorado law. U.S.Const. Art. VI, cl. 2.

**8.** In addition, plaintiff has not satisfactorily demonstrated that it could have received the full declared value for the lost goods. Plaintiff returned the goods because it found them to be seriously defective. It is therefore questionable whether it could have sold them for their full declared value.

also hold that disputed facts bar partial summary judgment for plaintiff on the issue of liability. Plaintiff asserts that defendant was negligent in abandoning the goods in a Bogota customs warehouse and in not timely notifying plaintiff that the consignee had refused to accept the goods. Defendant responds that its duty ended upon delivery of the goods to the customs officials and that plaintiff received timely notice from the consignee that it would not accept the goods.

Because it is not clear whether the conditions on the back of the air waybill were included in the contract, it is impossible to determine the scope of defendant's duty to plaintiff. It is likewise not clear how far plaintiff could exercise its rights under article 12(1) of the Warsaw Convention without prejudicing the defendant. Summary judgment is therefore not appropriate. It is

ORDERED that defendant's motion *in limine* is denied. It is further

ORDERED that plaintiff's motion for summary judgment is denied.