**UNITED STATES WELDING, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**B & C STEEL, INC., a Colorado corporation; Metro Steel Fabricating, Inc., d/b/a Metro Steel Inc., a Colorado corporation; and Buckeye Welding Supply Company, Inc., a Colorado corporation, Defendants–Appellees.**

No. 10CA0879.

Colorado Court of Appeals, Div. III.

July 7, 2011.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

Arkey & Reha, LLC, John F. Reha, Sara Y. Hunt, Littleton, Colorado, for Plaintiff-Appellant.

Bucholtz & Bull, P.C., James C. Bull, Littleton, Colorado, for Defendants-Appellees.

Opinion by Judge ROY.

In this breach of contract case, plaintiff, United States Welding, Inc. (seller), appeals from a judgment in favor of defendants, B & C Steel, Inc. and Metro Steel Fabricating, Inc. (purchasers), and Buckeye Welding Supply Company, Inc. (competitor). We affirm in part, reverse in part, and remand.

Seller is a supplier of gases used in welding. It has seventeen outlets or facilities in six states, the most notable for our purposes being a store in Denver and an acetylene manufacturing facility in Salt Lake City, Utah.

In 2001, seller and purchasers entered into a requirements contract for the purchase and sale of carbon dioxide, oxygen, and acetylene. On appeal, the parties do not dispute either the nature of the contract or its breach by purchasers. Instead, the dispute centers on seller's calculation of gross profits from the sale of carbon dioxide, oxygen, and acetylene.

At trial, purchasers and competitor objected to the evidence of seller's calculation of damages because it lacked an adequate foundation and was based on a summary of documents not in evidence under CRE 1006. The trial court sustained the objection, and at the conclusion of seller's case, granted purchasers' motion to dismiss.

## I. Lost Profits

Seller first contends that the trial court erred in dismissing its claims at the close of its evidence on the ground that it had not presented sufficient evidence of its lost profits. We agree in part and disagree in part.

### A. Standard of Review

We review the sufficiency of the evidence under a de novo standard. *E-470 Public Highway Authority v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000). On an appeal from a judgment granting a motion to dismiss at the end of a plaintiff's case, we must consider all relevant facts in the light most favorable to the plaintiff. *Goodfellow v. Kattnig*, 533 P.2d 58, 59 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)).

### B. Net Profit—Gross Profit

Under Colorado law, damages for lost profits means the loss of net, not gross, profits. *Lee v. Durango Music*, 144 Colo. 270, 355 P.2d 1083 (1960); *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1024 (Colo.App.1993).

When operating expenses (overhead) are fixed, however, gross profits may be awarded as representing net profits. *Combined Communications Corp. v. Bedford Motors, Inc.*, 702 P.2d 281, 282 (Colo.App.1985); *P & M Vending Co. v. Half Shell of Boston, Inc.*, 41 Colo.App. 78, 80–81, 579 P.2d 93, 96 (1978); *see also Carriage Bags, Ltd. v. Aero-*

*linas Argentinas,* 521 F.Supp. 1363, 1367 (D.Colo.1981) (applying Colorado law).

In *P & M Vending,* the division observed:

> At trial, plaintiff established that it is a relatively large company with about fifty employees and approximately two thousand [cigarette] vending machine locations in the Denver area, some of which are in the immediate vicinity of the defendants' restaurant; that plaintiff's operating and overhead expenses are fixed costs that would not diminish as a result of the loss of one location such as the defendants'; and that there would be no difference or only a minimal difference between plaintiff's revenues from the vending machine and the plaintiff's net profits. Plaintiff further established that it had more vending machines than locations, and that profits were dependent on the number of locations rather than the number of machines. This evidence formed the basis of the findings and award entered by the trial court.
>
> *Where operating expenses are fixed, gross profits may be awarded as representing net profits. Distillers Distributing Corp. v. J.C. Millet[t] Co.,* 310 F.2d 162 (9th Cir.1962). Hence, under the circumstances presented here, the trial court was correct in concluding that the liquidated damages contemplated by the written agreement were not disproportionate to plaintiff's actual damages and that the liquidated damages provision was valid and enforceable.

41 Colo.App. at 80–81, 579 P.2d at 95 (emphasis added).

Seller tried its case in reliance on *Carriage Bags,* 521 F.Supp. at 1367. In *Carriage Bags,* the court, without reference to *P & M Vending,* stated that damages should place the injured party in the same position it would have enjoyed had the contract not been breached, and that if overhead remained unchanged, then lost gross profits would be the proper measure of damages. *Id.*

We conclude that seller's lost gross profits from the sale of carbon dioxide and oxygen as a retailer may be awarded as net profits under the holding in *P & M Vending.* However, with respect to acetylene, this case turns on whether there is sufficient evidence of gross profits.

### C. Definitions

No Colorado authority defines and applies the terms "gross profit" and "net profit." These terms are rooted in accounting, and undoubtedly accountants, economist, or other professionals frequently testify as expert witnesses on these issues.[1] However, no accountant testified here, and purchasers and competitor, as they did in the trial court, challenge the sufficiency of the evidence. Therefore, in order to resolve the matter before us and provide guidance to the practicing bar, we address and apply these terms.

In defining these terms, we rely on Jae K. Shim and Joel G. Siegel, *Dictionary of Accounting Terms* (5th ed. 2010) (*Dictionary*); a glossary in David R. Herwitz and Matthew J. Barrett, *Accounting for Lawyers* (4th ed. 2006) (*Textbook*); and *Black's Law Dictionary* (9th ed. 2009) (*Black's*).

"Gross profit" has been legally defined as "[t]otal sales revenue less the cost of the goods sold [with] no adjustment being made for additional expenses and taxes." *Black's* at 1329. The accounting definitions are similar. *Dictionary* at 222 ("sales minus cost of sales; also called *gross margin*"); *Textbook* at 1118 ("difference between net sales and cost of goods sold").

The synonymous terms "net profit" and "net income" are accounting terms defined as "revenue less all expenses." *Dictionary* at 312. The *Textbook* definition is: "[T]he difference between an enterprise's revenues and its cost of sales, operating expenses, and taxes during a particular income period." *Textbook* at 1122.

The synonymous terms "cost of sales" and "cost of goods sold" have been defined as follows:

---

**1.** In defining and applying accounting terms here, we recognize that accountants and others qualified as experts may define or apply them differently as the context or their professional standards and experience may require.

[The] price of buying or making an item that is sold; also called *cost of goods sold.* The difference between sales and cost of sales is gross profit. *For a retail business, the cost of sale is the purchase price of the item. For a manufactured good, the cost of sale include* [sic] *direct material, direct labor, and factory overhead associated with producing it.*

*Dictionary* at 117 (emphasis added). The *Textbook* definition is similar:

[C]ollects the costs attributable to items sold during an accounting period, which the enterprise previously purchased for resale or manufactured. *These costs include direct materials and labor, other direct costs, and an allocable portion of indirect costs such as factory overhead. These costs do not include office, selling, accounting, or advertising expenses.*

*Textbook* at 1112 (emphasis added).

Direct material is "all the material that becomes an integral part of the finished product." *Dictionary* at 146. Direct labor is "work directly involved in making the product." *Id.* Factory overhead is "the total of all costs of manufacturing except direct materials and direct labor." *Id.* at 183.

### D. The Evidence

Seller's evidence of damages was admitted through the testimony of its contract administrator (administrator), an attorney. His approach to determining gross profits was to determine the average sales price of each product during the period in question, less the average cost of the product during the period in question, and multiply the remainder by the average number of unit sales to purchasers, plus income from cylinder rental.[2]

### 1. Oxygen and Carbon Dioxide

According to administrator, seller purchases oxygen and carbon dioxide in bulk and transfers the gases into cylinders. The gas is sold in cylinders rented by and delivered to its customers. The transfer of the gases involves placing the retail cylinder on a scale and connecting it to a bulk tank. The valves are opened and the gas is transferred into the retail cylinder until it contains the requisite weight of gas (fifty pounds in the case of oxygen).

### 2. Acetylene

Acetylene is the product of a chemical reaction between calcium carbide and water, which is then stored in retail cylinders containing acetone, which stabilizes the acetylene. Seller manufactures acetylene at its plant in Salt Lake City, Utah. According to administrator, the principal material cost in the manufacture of acetylene is the calcium carbide, and its cost was the only cost of production included in his calculation of cost of goods sold for acetylene. Administrator testified that seller manufactures approximately 6,500 retail cylinders of acetylene a month; purchasers collectively purchased an average of 11 cylinders a month, or. 169% of seller's production; purchasers' requirements could be satisfied out of inventory maintained for walk-in customers; and production costs are unaffected by the loss of the sales to purchasers. On cross-examination, administrator conceded that his cost figures for acetylene did not include the cost of water and acetone, the cost of the seven employees operating the plant, the costs of maintaining and certifying the acetylene tanks, the cost of maintaining the manufacturing facility, depreciation of the manufacturing facility, the cost of shipping the cylinders to and from the manufacturing facility, or the cost of insuring the manufacturing facility which engages in a hazardous activity.

The administrator testified that because the costs, other than for calcium carbide, are either de minimis or remain constant regardless of whether purchasers perform on the requirements contract, there is no need to separately account for them in determining gross profit.

---

**2.** An illustrative example of a gross profit calculation for a retail business is: Sales - Cost of Sales [beginning inventory + purchases - ending inventory] = Gross Profit. http://www. allbusiness.com/glossaries/cost-goods-sold/4949230–1.html (last visited June 6, 2011). This method essentially determines cost of sales based on averages.

### E.  Analysis and Conclusion

■ With respect to damages for purchasers' failure to purchase oxygen and carbon dioxide, it appears that seller is engaged in retail sales.  That is, while it broke the bulk quantities of the gases down into retail cylinders, the operation was simple and inexpensive, similar to a retail store's unpacking merchandise from shipping boxes or containers.  Therefore, in our view, the evidence of the purchase price paid by seller is sufficient evidence of gross profit to survive a motion to dismiss.  Further, we agree with seller that, under the circumstances, gross profits on the sale of these gases could be awarded as net profits.

■ However, as to acetylene, seller did not, in our view, present sufficient evidence of gross profits to survive a motion to dismiss at the close of its evidence.  Unlike the sale of the oxygen and carbon dioxide, seller is in the business of manufacturing and distributing acetylene.  The evidence does not include all the direct material costs, direct labor costs, and factory overhead associated with the manufacture of acetylene.  It is possible that these unsupported costs are relatively minor, but we cannot determine even that question on this record.

Therefore, there is insufficient evidence of lost gross profits with respect to the lost sales of acetylene to survive a motion to dismiss at the close of seller's evidence.

### II.  Admission of a Summary of Damages

■ Because any award of damages for oxygen and carbon dioxide on remand must be based on the summary of damages, we address seller's argument that the trial court abused its discretion in rejecting its exhibit summarizing the calculation of gross profits as to those gases.

A trial court's evidentiary ruling may be reversed upon a showing of abuse of discretion or clear error.  *Honey v. People,* 713 P.2d 1300, 1303 n. 4 (Colo.1986).  An abuse of discretion occurs when the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies incorrect legal standards.  *LaBerenz v. American Family Mut. Ins. Co.,* 181 P.3d 328, 333 (Colo.App.2007).

CRE 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.  The court may order that they be produced in court.

*See Airborne, Inc. v. Denver Air Center, Inc.,* 832 P.2d 1086, 1090 (Colo.App.1992).

■ For admission, the proponent of the summary evidence must (1) identify the documents underlying the summary and show them to be voluminous; (2) establish that the underlying documents are otherwise admissible evidence; (3) provide the other party with a copy of the summary in advance of its use; and (4) provide "the opposing party with a reasonable time and place for examination of the available documents underlying such summary."  *People v. McDonald,* 15 P.3d 788, 790 (Colo.App.2000).

Here, at the close of seller's case, an exhibit summarizing the calculation of its damages was offered into evidence.  Purchasers and competitor objected to its admission because it lacked an adequate foundation and because it was a summary of documents not in evidence under CRE 1006.  The trial court rejected the exhibit because it represented the calculation of losses of gross, not net, profits.

### A.  Foundation

■ The offering party must lay a sufficient foundation for, or the parties must stipulate to, the admissibility of the underlying material.  *Pyles–Knutzen v. Board of County Comm'rs,* 781 P.2d 164, 167 (Colo.App. 1989).  The administrator testified that he had personal knowledge of the sales and other business records maintained by seller in the normal course of business.  He testified that he calculated gross profit damages by taking a baseline of purchasers' average purchases for the year prior to the breach.  He further testified that he had personal

knowledge of the purchasing invoices from the seller's suppliers which were maintained in the normal course of business, that he personally reviewed all of the invoices, and that he included rents for the cylinders containing the gases billed to purchasers based on reviewing gas invoices and determining monthly averages.

## B. CRE 1006

Seller provided purchasers with a copy of the summary of damages approximately four months before the commencement of the trial but the supporting documents were first produced at trial. However, the supporting documents as to oxygen and carbon dioxide were admitted without objection.

In our view, there was substantial compliance with CRE 1006, as there was sufficient evidence to support the admission of the damages summary as to oxygen and carbon dioxide before the summary was offered at trial. Thus, the trial court abused its discretion in rejecting the exhibit as to those gases.

The judgment is affirmed as to the dismissal of seller's claims for damages for lost profits from the sale of acetylene, reversed as to seller's claims for damages for lost profits from the lost sales of oxygen and carbon dioxide, and the case is remanded for further proceedings with respect to those gases consistent with the views expressed in this opinion.

Judge FURMAN and Judge LICHTENSTEIN concur.