**TOKIO MARINE & FIRE INSURANCE CO., LTD., a corporation, Plaintiff,**

v.

**UNITED AIR LINES, INC., et al., Defendants.**

No. CV 95–4361 RAP (Mcx).

United States District Court, C.D. California.

April 25, 1996.

Dennis A. Cammarano, Long Beach, CA, for Plaintiff.

Dennis J. Seider, Seider & Reynolds, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT UNITED AIR LINES, INC.'S MOTION FOR SUMMARY ADJUDICATION OF ITS SIXTH AFFIRMATIVE DEFENSE

PAEZ, District Judge.

### I.

### INTRODUCTION

This action arises out of two shipments of Citizen brand watches from Hong Kong to Los Angeles. Plaintiff Tokio Marine & Fire Insurance Co., Ltd. ("plaintiff") is the insurer of Citizen Watch Co. of America, ("Citizen"), the owner of the shipped goods, which were transported by defendant United Air Lines,

Inc. ("United" or "UAL"). Plaintiff alleges that of the 125 cartons of watches shipped, 9 cartons were missing, and has sued UAL for the full value of the loss. The parties agree that the shipments are governed by the Convention for the Unification of Certain Rules Relating to International Travel by Air, Oct. 12, 1929, reprinted in 49 U.S.C. § 1502 ("Warsaw Convention") as both Hong Kong and the United States of America are signatories to the Convention.

By this motion, and although titled a motion for summary judgment, UAL actually seeks summary adjudication of its sixth affirmative defense for limitation of liability under the Warsaw Convention. In response, plaintiff argues UAL is precluded from enforcing the Convention's limitation on liability because (1) UAL's waybills fail to comply with certain of Article 8's notice requirements and (2) UAL's wilful misconduct proximately caused plaintiff's loss.

## II.

### RELEVANT FACTUAL BACKGROUND [1]

Citizen frequently utilizes UAL to ship cargo from Hong Kong to Los Angeles. The current dispute arises out of the loss of certain cargo, namely watches, from two such shipments.

### A. The March 1994 Shipment

On March 11, 1994, the first of the two subject shipments consisting of 66 cartons was prepared for shipment. The parties dispute who packaged the cartons for the carriage. UAL contends that Citizen's freight forwarder, Yamato Transport Ltd. ("Yamato"), packed the cartons in sealed containers. Plaintiff contends UAL's agent, Hecny Transportation ("Hecny"), was responsible for packaging. Plaintiff also contends that Hecny did not containerize the cargo, but only placed it on a pallet covered with transparent plastic and netting.[2] In any event, both parties agree that the cargo was accompanied by United air waybill No. 60062962,

and an air waybill and manifest prepared by Yamato.

The March cargo arrived at LAX on March 12, 1994. UAL contends it did not know how many cartons arrived at LAX because they were in sealed containers. Ultimately, however, UAL could account for only 61 of the 66 cartons.

### B. The August 1994 Shipment

On August 20, 1994, United issued waybills Nos. 60089120 and 60089142 for the second shipment consisting of 59 cartons of watches. Yamato also issued air waybills and manifests for this shipment. According to plaintiff, the cargo was not carried on the UAL flight stated on the United waybill.

UAL contends it received three sealed containers, which contained only 55 of the 59 cartons.

In total, Citizen alleges nine missing cartons from the two shipments. According to UAL, the combined weight of these nine cartons totals 374.1 kilograms, while plaintiff claims the lost cargo weighs 385 kilograms.

### C. Theft by UAL Employee

Cargo matching the United waybills was found at the home of an UAL employee, Roderick Whitfield. Whitfield was hired by UAL in May of 1986 as a ramp serviceman. Whitfield's personnel records indicate that he had previously been disciplined for poor attendance, excessive sick time, taking excessive breaks and lunch hours, as well as a forklift accident and a fist fight with a co-worker. At the time of the theft, Whitfield was on the fourth level of discipline, five being the most severe level discipline resulting in termination. Although prior to the theft plaintiff incurred subsequent disciplinary infractions while on level four probation, UAL did not terminate Whitfield at that time.

---

1. All facts are taken form the parties' respective statements of undisputed facts and/or the admissible evidence submitted by the parties.

2. This dispute is not material to the disposition of UAL's sixth affirmative defense.

## D. *The Current Litigation*

Plaintiff originally filed the current action in Los Angeles County Superior Court on June 2, 1995. UAL timely removed the action to federal court on June 30, 1995. Plaintiff alleges causes of action for loss of cargo, negligence, breach of contract, breach of bailment, and wilful misconduct. UAL's sixth affirmative defense is for limitation of liability under the Warsaw Convention.

# III.

## DISCUSSION

### A. *Legal Standard*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment "terminates the action without trial" and is a "judgment 'on the merits.'" Schwarzer, Tashima, and Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* ("*Fed.Civ.Proc.*"), § 14:28 (1995). Not only is summary judgment not "disfavored," but it is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

In a trilogy of 1986 cases, the Supreme Court clarified the standard for summary judgment. *See Celotex Corporation v. Catrett, supra; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electrical Industry Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The Court determines a fact's materiality according to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *see also Fed.Civ. Proc.,* §§ 14:123–141.

■ When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, the Court must believe the nonmovant and draw all justifiable inferences in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, *citing Adickes v. S.H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.,* 477 U.S. at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita:*

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

475 U.S. at 586–87, 106 S.Ct. at 1355–56.

The rules of evidence generally govern the admissibility of the facts. *Fed.Civ.Proc.,* § 14:160. Rule 56(e) requires that declarations or affidavits submitted in support of or in opposition to a summary judgment motion "be based on personal knowledge; state 'facts as would be admissible in evidence' ...; and 'show affirmatively that the affiant is competent to testify to the matters stated therein[.]'" *Id.,* § 14:162. Declarations on

information and belief are insufficient. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

## B. *Analysis*

■ UAL seeks summary adjudication of its sixth affirmative defense for limitation of liability under Article 22 of the Warsaw Convention. The Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." *Id.*, Art. 1. The Convention's provisions are to be construed broadly, in order to further the goals of uniformity and liability limitation. *Onyeanusi v. Pan Am*, 952 F.2d 788, 793 (3rd Cir.1992).

Article 22 of the Convention sets a per pound limit on the liability a carrier can suffer for such losses, damages or delay.[3] Warsaw Convention, Art. 22. Not all carriers, however, may take advantage of the liability limits. The Convention provides that a carrier of goods has the right to require the shipper to deliver a completed air waybill. *Id.*, Art. 5(1). Article 9 provides that if an air carrier "accepts goods without an air waybill having been made out," or if the air waybill does not comply with certain provisions of Article 8, the carrier is not entitled to avail itself of the Convention's liability limitation provisions.[4] *Id.*, Art. 9.

Article 8 provides, in relevant part:

The air waybill shall contain the following particulars: ...

. . . . .

(e) The name and address of the first carrier;

. . . . .

(q) A statement that the transportation is subject to the rules relating to liability established by this convention.

Article 25 of the Convention may also prohibit a carrier from taking advantage of the liability limits. Article 25 provides:

(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

(2) Similarly the carrier shall not be entitled to avail himself of the said provisions, if the damage is caused under the same circumstances by any agent of the carrier acting within the scope of his employment.

### 1. *Article 8's Notice Requirements*

■ Generally, except for subsections (h) and (i), all of Article 8's notice requirements identified in Article 9 must be included in the waybill. *Maritime Insurance Co. Ltd v. Emery Air Freight Corp.*, 983 F.2d 437 (2nd Cir.1993). Likewise, a waybill's notice that the Convention "may be" applicable sufficiently satisfies subsection (q). *Id.* The relevant case law on this issue has primarily been developed in the Second Circuit Court of Appeals.

In *Exim Industries, Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106 (2nd Cir. 1985), the air waybills were missing the method of packing (8(h)), the numbers on the packages (8(i)) and a properly worded notice of the Warsaw Convention's applicability (8(q)). Nevertheless, the court held the Convention applied to limit the defendant's liability. *Id.* at 108. Generally, the court reasoned that the omissions were technical and non-prejudicial to the plaintiff as plaintiff received adequate notice of the applicability of the Convention and its limitations of recovery for loss. *Id.*

Specifically, with regard to subsections (h) and (i), the *Exim* court relied on the reasoning of an English case in the House of Lords to support its commercial reasonableness interpretation of Articles 8 and 9 of the Convention. The English interpreted Article

---

3. Article 22 generally provides that unless a higher value is declared in advance, the carrier's liability is limited to 250 french gold francs per kilogram, which is approximately U.S. $20.00 per kilogram on the basis of U.S. $42.22 per ounce of gold.

4. Article 9 provides, in relevant part:
[I]f the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

8(h) and (i), using two different texts, the official french text and the English translation, and determined they were both ambiguous. *Id.*

With regard to subsection (q), the *Exim* court reasoned that the use of the phrase "the Warsaw Convention may be applicable" on the waybill—rather than "is" applicable—gave the shipper sufficient notice required by subsection (q). The court observed:

> Although the Convention prescribes the use of the word "is", not the words "may be", we believe the framers' intent was that the shipper be given reasonable notice of the likelihood that the Convention would be applicable, not that the carrier be treated as a didactic arbiter of the law. The phrase "may be" is consistent with this intent.

*Id.* at 108.

Eight years later, in *Maritime Insurance Co. Ltd v. Emery Air Freight Corp., supra,* the Second Circuit evaluated *Exim* in light of Supreme Court authority regarding treaty interpretation.[5] The *Maritime* court made clear that non-compliance with subsections (h) and (i) is not an automatic forfeiture of the limitation of liability because those subdivisions are deemed to be ambiguous on their face. *Id.,* 983 F.2d at 440; *see also, Hitachi Data Systems Corp. v. United Parcel Service, Inc.,* 76 F.3d 276, 278 (9th Cir.1996); *Distribuidora Dimsa v. Linea Aerea Del Cobre S.A.,* 976 F.2d 90 (2nd Cir.1992). In that regard, the court affirmed the validity of *Exim,* but noted that "*Exim* must be limited to its facts; that is, the 'commercially significant' test applies only to subsections (h) and (i)." *Maritime,* 983 F.2d at 440.

The *Maritime* court also reaffirmed the validity of *Exim* 's holding that notice that the Convention "may be applicable" satisfies subsection (q), observing:

> The waybill in *Exim* stated that the Convention may be applicable instead of stating categorically that it is applicable.

However, we think the court permissibly looked to the framers' intent in that instance because there was no pure omission of a particular. Article 9 only requires that the waybill contain the subsection (q) particular; it does not address the problem of slight deviations in the language. Article 9 offers no clear guidance in this respect, and therefore the principle espoused in *Chan* and *Victoria Sales* [*Corp. v. Emery Air Freight,* 917 F.2d 705 (2nd Cir. 1990) ] does not apply. For these reasons we think *Exim* remains good law.

*Id.* at 440.

### a. Subsection (e)

In the instant action, plaintiff first argues that UAL's air waybills do not comply with subsection (e) requiring the waybill to provide the address of the first carrier. Both the March and August United waybills clearly state: United Airlines, P.O. Box 66100, Chicago, Illinois 60666. The waybills also identify Hecny Transportation Ltd. as the "Shipper," with Hecny's address as 111 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong. Approximately two inches below the "Shipper" designation, Hecny Transportation Ltd/HKG (or HTL/HKG) is identified as the "Issuing Carriers Agent." The face of the waybills themselves dispel any argument that UAL failed to identify the name and address of the first carrier. Thus, plaintiff fails to raise a triable issue of material fact that UAL failed to comply with subsection (e).

### b. Subsection (q)

Plaintiff next argues that UAL's waybills fail to state that the Warsaw Convention is applicable to the transaction as required by subsection (q). Rather, here, the reverse side of the waybills state that "THE WARSAW CONVENTION MAY BE APPLICABLE." (Emphasis added). Plaintiff relies upon *Carriage Bags, Ltd. v. Aerolinas Argentinas,* 521 F.Supp. 1363 (D.Colo.1981), which held, with little analysis, that the statement on the waybill that the "Warsaw Convention may be applicable" was insufficient to

---

**5.** Notably, in *Chan v. Korean Air Lines,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) the Supreme Court held that "where the text [of the treaty] is clear ... we have no power to insert an amendment." *Id.,* at 133–136, 109 S.Ct. at 1683–1684. The practical effect of the *Chan*

decision is that when a treaty is clear, the courts may not alter or amend the treaty no matter how small or trivial the amendment may be. In contrast, if the treaty is ambiguous, the courts may employ traditional methods of interpretation. *Id.*

meet subsection (q)'s requirement. *Id.* at 1365.

*Carriage Bags,* however, was decided before the Second Circuit's decisions in *Exim* and *Maritime,* and thus, its current validity on this issue is highly questionable. Moreover, the Second Circuit's reasoning when sanctioning the "may be applicable" language is sound. Here, the United waybills provide, in relevant part:

> INTERNATIONAL CONDITIONS OF CONTRACT NOTICE CONCERNING CARRIERS' LIMITATION OF LIABILITY
>
> IF THE CARRIAGE INVOLVES AN ULTIMATE DESTINATION OR STOP IN A COUNTRY OTHER THAN THE COUNTRY OF DEPARTURE, THE WARSAW CONVENTION MAY BE APPLICABLE AND THE CONVENTION GOVERNS AND IN MOST CASES LIMITS THE LIABILITY OF THE CARRIER IN RESPECT OF LOSS, DAMAGE OR DELAY TO CARGO TO 250 FRENCH GOLD FRANCS PER KILOGRAM, UNLESS A HIGHER VALUE IS DECLARED IN ADVANCE BY THE SHIPPER AND A SUPPLEMENTARY CHARGE IS PAID IF REQUIRED.
>
> THE LIABILITY LIMIT OF 250 FRENCH GOLD FRANCS PER KILOGRAM IS APPROXIMATELY US $20.00 PER KILOGRAM ON THE BASIS OF US $42.22 PER OUNCE OF GOLD.

Consistent with the Convention's framers' intent as explained in *Exim,* the above-noted language provided Citizen reasonable notice of the Convention's likely application as these were contracts which involved international transport. Plaintiff fails to raise a triable issue of fact to the contrary.

■ Plaintiff next takes issue with the fact that the subsection (q) notice (cited above) was contained on the *reverse* side of the UAL waybills. Plaintiff again relies upon *Carriage Bags, supra,* 521 F.Supp. 1363. In *Carriage Bags,* the reverse side of the waybill contained language the court found acceptable for purposes of subsection (q). The front of the waybill provided:

> The shipper certifies that the particulars on the face hereof are corrects (sic) and agrees to the CONDITIONS ON REVERSE HEREOF.

*Id.* at 1365. This statement was followed by a space for the signature of the shipper or its agent, but was not signed by either party. *Id.* The court held that if plaintiff or its agent had signed the space on the front of the waybill, then subsection (q) would have been satisfied. *Id.* The court observed:

> In this case, however, the waybill did not state on its face that the conditions printed on the back were part of the contract; it only had a blank where the shipper could so agree. It is therefore not obvious that plaintiff assented to the terms of the back ... I hold that the conditions on the back of the waybill, including condition 2.a) are incorporated into this contract only if defendant can prove that plaintiff or its agent assented to their inclusion.

*Id.* at 1366.

The instant case is distinguishable from *Carriage Bags.* Here, the front of the UAL waybills provide, in relevant part:

> It is agreed that the goods described herein are accepted in apparent good order and condition (except as noted) for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF. THE SHIPPER'S ATTENTION IS DRAWN OF (sic) THE NOTICE CONCERNING CARRIERS LIMITATION OF LIABILITY. Shipper may increase such limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

(emphasis in original). Simply put, the plain language on the face of the UAL waybills expressly incorporated the conditions on the reverse into the contract. *Accord, Jahanger v. Purolator Sky Courier,* 615 F.Supp. 29, 32 (E.D.Pa.1985) (front of airbill stated "subject to conditions of contract on reverse of shipper's copy"; court held that "[w]here the airbill states on its face that the conditions printed on the back are part of the contract, and the shipper receives the airbill and permits the carrier to proceed with the ship-

ment, the shipper is presumed to have assented to the terms of the airbill"). Again, plaintiff fails to raise a triable issue of material fact on this issue.

■ Finally, plaintiff argues that UAL's alleged substitution of flights violates Articles 8 and 9. Plaintiff, however, fails to cite any authority in this regard. Any reliance upon Article 8(p), which states the air waybill must contain "the time fixed for the completion of transportation and a brief note of the route to be followed," is misplaced as Article 9 does *not* require compliance with Article 8(p). In any event, provision 8(a) of the UAL waybills provide for substitution of flights.

### 2. *Article 25 "Wilful Misconduct"*

#### a. Applicable law

■ Plaintiff has the burden of proving wilful misconduct. *Koirala v. Thai Airways International,* 1996 WL 40243 *4 (C.D.Cal. Jan. 26, 1996), *citing Republic National Bank of N.Y. v. Eastern Airlines, Inc.,* 815 F.2d 232, 238–239 (2nd Cir.1987). The Ninth Circuit has defined "willful misconduct", for purposes of the Warsaw Convention, as " 'the intentional performance of an act with knowledge that the ... act will probably result in injury or damage or the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.' " *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 723 (9th Cir.1987), *citing Republic National Bank, supra,* 815 F.2d at 238–239 (quoting *Pekelis v. Transcontinental & Western Air,* 187 F.2d 122, 124 (2nd Cir.1951), *cert. denied,* 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951)). That is, for the misconduct to be "wilful," there must be some knowledge that the dam-

age would probably result. *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532 (2nd Cir.1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).[6] Thus, it is axiomatic that the wilful misconduct must also proximately cause the damage claimed. *Johnson,* 834 F.2d at 723, *citing, Perera Co., Inc. v. Varig Brazilian Airlines, Inc.,* 775 F.2d 21, 23 (2nd Cir.1985); *Wing Hang Bank, Ltd. v. Japan Air Lines Co., Ltd.,* 357 F.Supp. 94, 97 (S.D.N.Y.1973) (holding that robbers, not the airline, were the proximate cause of the loss).

The District of Columbia Circuit recently explained the concept of "recklessness" as it applies to Article 25 of the Convention:

> [B]esides showing that the defendant intends the act which ultimately causes the harm, a plaintiff must prove that the defendant was subjectively aware of the consequences of his act—not necessarily that it would cause the exact injury, but at least that it was certainly likely to cause an injury to plaintiff.

*Saba v. Compagnie Nationale Air France,* 78 F.3d 664, 668 (D.C.Cir.1996) (footnote omitted). The Court explained that "we read the Warsaw Convention to limit liability in situations where a reasonable employee should have but did not understand that her actions posed a substantial risk of harm to a shipper's goods." *Id.* at 669–670.[7]

#### b. Application

#### 1) Whitfield's Theft

Plaintiff first argues that UAL's employee, Whitfield's, intentional theft constitutes wilful misconduct on behalf of United because UAL is owned by its employees, including Whitfield. Plaintiff, however, presents *no* admis-

---

**6.** In *Berner,* the Second Circuit rejected the district court's jury instruction that "wilful misconduct is 'carelessness without any regard for the consequences.' " *Id.* at 537.

**7.** Relying upon cases decided under the Interstate Commerce Act, 49 U.S.C. § 10101, and the Federal Aviation Act, 49 U.S.C. § 1551, UAL asserts that only when appropriation of property by the carrier is for the carrier's own use, will it

constitute "wilful misconduct." *See e.g., Glickfeld v. Howard Van Lines,* 213 F.2d 723, 727 (9th Cir.1954) (Interstate Commerce Act); *Neal v. Republic Airlines,* 605 F.Supp. 1145, 1149 (N.D.Ill. 1985) (Federal Aviation Act). UAL failed to cite, and the Court's own research did not reveal, authority which extends this proposition to Article 25 of the Warsaw Convention.

sible evidence to that effect. This is simply not a credible argument.

### 2) Failure to Terminate Whitfield

██ Plaintiff argues "UAL's failure to follow its guidelines and rules, and its failure to discharge Mr. Whitfield, a clear security risk, is reckless disregard for the consequences." In response, UAL notes that the disciplinary actions taken against Whitfield were for non-theft related offenses. Moreover, prior to his employment with UAL, Whitfield was investigated and cleared by U.S. Customs, which did a ten year background check on Whitfield.

Thus, the issue is whether on the present record a reasonable inference can be drawn that UAL should have known that Whitfield was likely to steal cargo, or otherwise presented a security risk? Certainly, if UAL had knowledge of a prior incident of theft by Whitfield, but took no action, recklessness would be a reasonable inference. There is no such evidence in this record. Rather, the majority of Whitfield's discipline arose from his excess absences and tardiness. Whitfield was also involved in a forklift accident and an altercation with a co-worker. At most, the evidence suggest that Whitfield may have been insubordinate or irresponsible, but there is no hint of the threat of theft.[8] Plaintiff fails to raise a triable issue of material fact that the theft of Citizen's cargo was caused by UAL's reckless or wilful failure to terminate Whitfield.

### 3) Failure to Store Cargo in Secured Area

██ Finally, plaintiff argues that UAL's failure to treat the cargo as it customarily treats high value cargo also constitutes reckless disregard of the likelihood of theft. Plaintiff argues that the description on the air waybills gave UAL notice of the valuable

nature of the cargo,[9] and as such UAL was reckless in not storing the cargo in the high value storage room.

The record is uncontroverted that Citizen did not declare the cargo as valuable[10] or purchase the high value cargo protection available at an increased cost. And, although the record suggests that on occasion UAL may have gratuitously provided high value handling to cargo which was not declared as such, but that UAL knew to be valuable, the record does not evidence that this "gratuitous conduct" was a rule, regulation or policy of UAL. See, Republic National Bank of New York, 815 F.2d at 239. Likewise, there is no indication in the record that on prior occasions Citizen's undeclared valuable goods were given value cargo protection, or that Citizen otherwise relied upon UAL's prior gratuitous conduct. Finally, the record is equally void of evidence that UAL's failure to gratuitously provide high value cargo protection for these two shipments was likely to result in a theft of the cargo—particularly when Citizen was a frequent shipper with UAL. As such, plaintiff fails to raise a triable issue of material fact that UAL was reckless when it failed to gratuitously treat Citizen's cargo as valuable cargo.

### IV.

### CONCLUSION

Plaintiff fails to raise a triable issue of fact on UAL's sixth affirmative defense for limitation of liability under the Warsaw Convention. As such, the Court GRANTS UAL's motion for summary adjudication of its sixth affirmative defense. As a result, Article 22 of the Convention applies to both the March 1994 and August 1994 shipments at issue in this action. It appears UAL concedes plaintiff's loss totals 385 kilograms, and that under Article 22, at $20.00 per kilogram, plain-

---

8. Even if UAL should have terminated Whitfield under its own termination policies, UAL's failure to terminate Whitfield (for an unacceptable dependability record) was not the cause of the theft. UAL simply did not know and had no reason to believe that Whitfield was a thief.

9. The March waybill identifies the cargo as "watches." The August waybills, however, identify the cargo as "horological instruments."

10. On all three waybills under "Declared Value for Carriage," states "N.V.D.", indicating that no value was declared.

tiff's recoverable loss totals $7,700.00.[11]

IT IS SO ORDERED.

---

**11.** It appears that this Order resolves all issues in this case. As such, within fourteen days of entry of this Order, the parties are ordered to (1) submit a stipulated judgment in favor of plaintiff in accord with the present Order or (2) file a motion for summary judgment which addresses any remaining issue(s).