**HIH MARINE INSURANCE SERVICES, INC., as agent for HIH Casualty & General Insurance, Ltd., Plaintiff,**

v.

**VIRGIN ATLANTIC AIRWAYS, LTD.; Japan Airlines Company, Ltd.; Ogden Aviation Terminal Services, Inc.; All Van Transportation & Distribution Services, Inc.; and Does 1–20, Defendants.**

No. C99–3215MEJ.

United States District Court, N.D. California.

July 20, 2000.

Paul Gary Sterling, Sterling & Clack, San Francisco, CA, for HIH Marine Insurance Services, Inc.

Frank A. Silane, Kevin R. Sutherland, Condon & Forsyth LLP, Los Angeles, CA, for Virgin Atlantic Airways Ltd., Japan Air Lines Company, Ltd.

Lorraine A. Barrabee, Derby Cook Quinby & Tweedt, San Francisco, CA, for All Van Transportation & Distribution Services, Inc.

Kymberly E. Speer, Nelsen Greenberg & Cohen, San Francisco, CA, for Ogden Aviation Terminal Services, Inc.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES, United States Magistrate Judge.

The Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' Motion for Partial Summary Judgment. Upon review of the parties' submissions, supporting declarations, statutory and case law, and Good Cause Appearing, the Court HEREBY ORDERS that (1) Defendants Virgin Atlantic and Japan Airlines' are permitted to avail themselves of the limited liability provision of Article 22(2) of the Warsaw Convention; (2) Plaintiff's claim that Defendant Ogden is not covered by the Warsaw Convention is moot; and (3) Defendant Japan Airlines is not subject to punitive damages.

### PROCEDURAL BACKGROUND

On June 2, 1999, Plaintiff HIH Marine Insurance (hereinafter "Plaintiff") filed a complaint in San Mateo County Superior Court, alleging conversion, negligence and liability as a common carrier for lost cargo against Defendants Virgin Atlantic Airways Ltd. (hereinafter "Virgin Atlantic"), Japan Airlines Co. Ltd. (hereinafter "Japan Airlines"), Ogden Aviation Terminal Service, Inc. (hereinafter "Ogden"), and All Van Transportation & Distribution Services, Inc. (hereinafter "All Van"). Plaintiff seeks compensatory damages in the amount of $99,927.28 against all Defendants and punitive damages against Defendant Japan Airlines. On July 7, 1999, Defendants Virgin Atlantic and Japan Airlines removed the action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Section 1441(b), in that it arises under a treaty of the United States—the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 1502 note (1976), commonly known as the Warsaw Convention. On March 6, 2000, Defendants Virgin Atlantic and Japan Airlines filed this Motion for Partial Summary Judgment, asserting that the Warsaw Convention limits the specific compensatory damages of Defendants Virgin Atlantic and Japan Airlines for the loss of 274 kilograms of cargo to $4,940 and that the Warsaw Convention precludes punitive damages against Defendant Japan Airlines. On March 13, 2000, Defendant Ogden joined the Motion for Partial Summary Judgment. On June 19, 2000, the Court dismissed Defendant All Van from

the case pursuant to the stipulation filed by Plaintiff and Defendant All Van. On June 23, 2000, however, Defendant Ogden filed a request with the Court that its Motion for Partial Summary Judgment be removed from the calendar because of a pending settlement between Defendant Ogden and Plaintiff. On June 28, 2000, the Court granted Defendant Ogden's request.

Therefore, the Court will only consider whether Defendants Virgin Atlantic and Japan Airlines are entitled to summary judgment limiting their liability under Article 22(2) of the Warsaw Convention and whether Defendant Japan Airlines is subject to punitive damages.

## UNDISPUTED FACTUAL BACKGROUND

Plaintiff brought suit against the above entitled Defendants for monies it paid for the loss of computer hard drives that were lost or stolen during shipment from Shannon, Ireland to Seagate Technology in Scotts Valley, California. The shipment was originally composed of nine pieces. Servisair transported all nine pieces by bus from Shannon, Ireland to Heathrow Airport in London, where Defendant Virgin Atlantic received the shipment on June 21, 1997. On June 22, 1997, Defendant Virgin Atlantic split the shipment and sent two of the nine pieces to San Francisco International Airport. On June 23, 1997, Defendant Virgin Atlantic sent the remaining seven pieces to San Francisco International Airport. The second shipment arrived in San Francisco on the same day it was sent, June 23, 1997, and was unloaded from Defendant Virgin Atlantic's airplane by Defendant Ogden. Defendant Ogden was operating under an agreement with Defendant Japan Airlines, which was the ground handling agent for Defendant Virgin Atlantic. The shipment was directly transported to Japan Airlines' cargo warehouse where it was broken down and stored. Defendant All Van, a trucking company, transported the shipment from Defendant Japan Airlines' cargo warehouse to Seagate Technology in Scotts Val-

ley, California. Upon delivery, it was discovered that twenty-four boxes of hard disk drives were missing. The missing hard drives have never been found. On June 30, 1997, Seagate, through its agent Dimerco Express Corp., made a claim alleging that a portion of the consignment was missing and Plaintiff reimbursed Seagate for the lost hard drives, totaling $99,927.38.

## DISCUSSION

### I. Legal Standard

#### A. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those that, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Governing Law

■ This action is governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 1502 note (1976), commonly known as the Warsaw Convention. The Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention, Art. 1(1); *See also, e.g., El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). "International transportation" is "[a]ny transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties ...." Warsaw Convention, Art. 1(2); 49 Stat. 3014. Where the terms of the Warsaw Convention apply, it preempts all local law to the contrary and governs exclusively the rights and liabilities of the parties. *See, e.g., Tseng*, 525 U.S. at 169–170, 119 S.Ct. 662.

■ In this case, the airway bill issued by Virgin Airlines provides for transportation of the shipment from Shannon, Ireland to San Francisco, California. (See Exhibit A of Plaintiff's Opposition). Ireland and the United States are "High Contracting Parties to the Warsaw Convention." 2 Shawcross & Beaumont, *Air Law* 17, 21 (4th ed.1998). Therefore, since the shipment departed from Shannon, Ireland and arrived in San Francisco, California, this action is governed exclusively by the terms of the Warsaw Convention.

Article 22 of the Warsaw Convention provides:

> [i]n the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplemental sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that the sum is greater than the actual value to the consignor at delivery.

Warsaw Convention Art. 22(2), 49 Stat. 3019.[1]

Article 8 of the Warsaw Convention requires that the carrier's air waybill contain seventeen particulars. Warsaw Convention, Art. 8(a)-(q). Of the seventeen particulars, the following ten are deemed essential. Id., Art 9:

> (a) the place and date of its execution;
>
> (b) the place of departure and of destination;
>
> (c) the agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character;
>
> (d) the name and address of the consignor;
>
> (e) the name and address of the first carrier;
>
> (f) the name and address of the consignee, if the case so requires;
>
> (g) the nature of the goods;
>
> (h) the number of packages, the method of packing, and the particular marks or numbers upon them;
>
> (I) the weight, the quantity, the volume, or dimensions of the goods; ...
>
> .   .   .   .   .
>
> (q) a statement that the transportation is subject to the rules relating to liability established by this convention.

1. *See Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984) (the sum of 250 francs per kilogram in Article 22 is converted to $20 per kilogram, or $9.07 per pound); *Tokio Marine & Fire Ins. Co. v. United Air Lines, Inc.*, 933 F.Supp. 1527, 1531 n. 3 (C.D.Ca.1996).

Article 9 of the Warsaw Convention prohibits a carrier from enjoying limited liability under Article 22(2) if "the air waybill does not contain all the particulars set out in article 8(a) to (I), inclusive, and (q)." Warsaw Convention Art. 9. Courts have interpreted this provision of Article 9 according to its plain language, with the exception of subsection (h) and (I). *See Insurance Co. of North America v. Federal Express Corp.,* 189 F.3d 914, 918 (9th Cir.1999) (quoting *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 534, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991) and *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134, 109 S.Ct. 1676, 1683, 104 L.Ed.2d 113 (1989)). "[I]f an air carrier omits any of the enumerated particulars of subsections (h) and (I) of Article 8, Article 9 deprives the carrier of limited liability protection if the omitted particular is of commercial significance." *Brink's,* 93 F.3d at 1033 (citing *Exim,* 754 F.2d at 108). "[I]f a carrier omits any other essential particular from its air waybill, Article 9 deprives the air carrier of limited liability protection regardless of commercial significance." *Brink's,* 93 F.3d at 1034 (citing *Maritime Ins.,* 983 F.2d at 440).

## II. Legal Analysis

### A. Nature of the Dispute

Defendants Virgin Atlantic and Japan Airlines move for partial summary judgment on the grounds that this action is governed by the Warsaw Convention because the shipment in dispute was transported internationally by air between two High Contracting Parties to the Warsaw Convention—Ireland and the United States. (See Defendant's Motion for Partial Summary Judgment (hereinafter "Defendant's Motion") at p. 5). Defendants argue that the total cargo lost during transportation of the shipment from Ireland to the United States weighed a total of 247 kilograms. (See Defendant's Motion at p. 7). Therefore, Defendants assert that there are no material facts in dispute and they are entitled to partial summary judgment under Article 22(2) of the Warsaw Convention limiting their liability to $4,940. (See Defendant's Motion at p. 7).

Plaintiff argues that Defendants are not entitled to partial summary judgment limiting their liability under the Warsaw Convention. Plaintiff does not dispute that Defendants Virgin Atlantic and Japan Airlines are covered by the Warsaw Convention in this action. Plaintiff does assert, however, that Defendants' Master Air Waybill does not meet several of the requirements of Article 8(g), (h) and (I). Therefore, Plaintiff argues that Article 9 prohibits Defendants from availing themselves of the Article 22(2) limited liability provision. Specifically, Plaintiff argues that Defendants' Master Air Waybill fails to comply with subsections (g), (h) and (I) because (1) there is no indication of the nature of goods, (2) there is no indication of the "method of packing and the particular marks or numbers," (3) the number of packages designated is incorrect, and (4) the Master Air Waybill does not indicate that the shipment was going to be split and sent on separate days. (See Plaintiff's Opposition to Defendant's Motion at pp. 7, 8).

Defendants Virgin Atlantic and Japan Airlines respond that they fully complied with each of Article 8's requirements and are therefore entitled to limited liability of $4,940 under Article 9. Defendants contend that the Master Air Waybill incorporates the House Air Waybill and the Consolidated Cargo Manifest Report, which traveled with the shipment from Ireland to the United States in a "document pouch." (See Defendants' Reply to Plaintiff's Opposition at p. 10). Defendants assert that under the air cargo industry standard, outside documents referenced in the Master Air Waybill may be incorporated into the Master Air Waybill. (See Defendant's Reply to Plaintiff's Opposition at p. 10). Moreover, Defendants contend that the information contained in the Master Air Waybill, the House Air Waybill and the Consolidated Cargo Manifest Report is sufficient to satisfy the requirements of

Article 8, thereby limiting liability under Article 22(2). Furthermore, Defendants assert that subsections (h) and (I) are interpreted liberally by courts and an omission of a particular requirement of (h) or (I) deprives a carrier of limited liability only if the omission is commercially significant. (Defendant's Reply to Plaintiff's Opposition at p. 11). Therefore, even if the Master Air Waybill does not contain a particular requirement of subsections (h) or (I), the omission is not commercially significant. Thus, Defendants are not disqualified from enjoying limited liability under Article 22(2). (See Defendant's Reply to Plaintiff's Opposition at p. 12).

## B. There is No Material Fact in Dispute

Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Eisenberg v. Insurance Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987), Defendants Virgin Atlantic and Japan Airlines have the burden of showing that there is no material fact in dispute. The Court finds, based on the following analysis, that Defendants have met this burden.

First, the parties clearly agree on several factual points that are material to the subject of Defendants' summary judgment motion. They do not dispute that the shipment in question traveled internationally. It is clear that the shipment was carried by air from England to the United States. (See Defendants' Motion at p. 1; Plaintiff's Opposition to Defendants' Motion at p. 3). Furthermore, it is settled that 24 cartons containing 576 hard drives were lost during transportation. (See Exhibit D of Ginger's Declaration attached to Defendants' Motion; Plaintiff's Opposition at p. 4). The parties also agree that Plaintiff reimbursed Seagate in the sum of $99,927.38 for the lost pieces. (See Defendants' Motion at p. 1; Plaintiff's Opposition at p. 4). Finally, there is no dispute as to the fact that the House Air Waybill and the Consolidated Cargo Manifest Report accompanied the shipment and the Master Air Waybill throughout the entire duration of the journey. (See Defendants' Reply to Plaintiff's Opposition at p. 10; Plaintiff's Opposition at p. 3).

Second, Defendants have demonstrated that there is no dispute as to the material fact that the House Air Waybill and the Consolidated Cargo Manifest Report are incorporated into the Master Air Waybill under the cargo industry standard. Defendants argue that the cargo industry standard dictates that documents contained in a document pouch, which accompanies the shipment throughout the entire duration of the trip, are incorporated into the Master Air Waybill where the air waybill references the outside documents.

Defendants first base this argument upon the declaration of Eric Taylor. (See Declaration of Eric Taylor, attached to Defendants' Reply to Plaintiff's Opposition). The Court finds that Mr. Taylor's position at Virgin Atlantic and his experience in the air cargo industry demonstrate that he is competent to testify as to the air cargo industry standard regarding air waybills and has personal knowledge of the nature and function of air waybills in the air cargo industry. Mr. Taylor is Cargo Station Manager for Defendant Virgin Airlines and he states that he is "required to review air waybills and [he is] fully familiar with their contents and function as a document of carriage." (See Declaration of Eric Taylor, p. 1, para. 3). Therefore, pursuant to Federal Rule of Civil Procedure 56(e) and Civil Local Rule 7–5, the Court concludes that Mr. Taylor is a credible affiant and competent to testify as to the nature of air waybills in the air cargo industry.

Mr. Taylor's declaration supports the argument that outside information referenced in the air waybill is incorporated into the air waybill under the cargo industry standard. Mr. Taylor states that "[t]he information [the House Air Waybill and the Consolidated Cargo Manifest Report] contain is considered in the air cargo industry to be incorporated into the terms of the Air Waybill, and they travel with the

Air Waybill when the shipment is carried." (See Declaration of Eric Taylor at p. 2).

Defendants further support their definition of the cargo industry standard by referring to The Air Cargo Tariff (hereinafter "TACT"). (See Ginger Declaration, Exhibits J & K, attached to Defendants' Reply to Plaintiff's Opposition). TACT is published by the International Air Transport Association (hereinafter "IATA") and provides guidelines for airlines in the business of transporting consolidated shipments. Both Defendant Virgin Atlantic and Defendant Japan Airlines incorporate TACT's guidelines for transporting consolidated shipments. This is demonstrated by reference on both the Master Air Waybill and the House Air Waybill, which provide Defendants' IATA code in the spaces marked "agent's IATA code." Furthermore, TACT issue No. 44, published in April 1997, and which is the applicable issue in this case, lists Defendants Virgin Atlantic and Japan Airlines as incorporating "The Air Cargo Tariff (TACT) as their official source of information by reference into each of their individual waybills, applicable rates, rules and classifications." (See Ginger Declaration, Exhibit J, para. 9, attached to Defendants' Reply to Plaintiff's Opposition).

TACT requires that in the case of a consolidated shipment, as was the shipment in dispute, "[a] consolidated list must be furnished at the same time as the AWB." (See Ginger Declaration, Exhibit K, attached to Defendants' Reply to Plaintiff's Opposition). This provision of TACT demonstrates that air carriers are required to supply outside information in addition to and separate from the air waybill. Furthermore, the examples of air waybills provided in TACT demonstrate that the description of the nature of goods is not included on the air waybill itself, rather the air waybills refer to outside documents for the description of the goods. (See Ginger Declaration, Exhibit K, attached to Defendants' Reply to Plaintiff's Opposition). TACT's reference to outside documents shows that the incorporation of outside documents is acceptable under the air cargo industry standard.

Defendants' Master Air Waybill indicates that it is a consolidated shipment accompanied by supporting documents. The term "CONSOL" is included in the space on the Master Air Waybill marked "Nature and Quantity of Goods." Defendants argue that the inclusion of the term "CONSOL" on the air waybill is a "customary way of identifying goods that are consolidated and shipped in the air cargo industry." (See Declaration of Eric Taylor at p. 1). Furthermore, the phrase "DOC'S POUCH ATT'D" appears clearly in the space on the Master Air Waybill marked "Handling Information". (See Exhibit A of Plaintiff's Opposition). "DOC'S POUCH ATT'D" indicates that a "document pouch" was attached to the Master Air Waybill and traveled with the shipment from Shannon to San Francisco. The "document pouch" contained the House Airway Bill and the Consolidated Cargo Manifest Report. (See Declaration of Eric Taylor at p. 1).

Plaintiff, as the party opposing the motion for partial summary judgment, has the burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). The Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir.1987). Plaintiff fails to set forth any evidence contradicting Defendants' showing that outside information referenced by the Master Air Waybill is incorporated into the Air Waybill under the cargo industry standard. Thus, Plaintiff fails to meet its burden of proof of rebutting Defendants' assertions regarding the incorporation of the House Air Waybill and the Consolidated Cargo Manifest Report into the Master Air Waybill. Hence, the Court finds that there is no dispute as to the facts set forth by Defendants.

Accordingly, the Court finds that there is no dispute under *Celotex* and *Eisenberg* as to the following facts: (1) the Master Air Waybill effectively indicates that it was a consolidated shipment; (2) the air cargo industry standard and TACT require Defendants to provide supporting documentation to the Master Air Waybill on a consolidated shipment; (3) outside documents are routinely incorporated into the Master Air Waybill under the air cargo industry standard and TACT; (4) the Master Air Waybill was accompanied by the House Air Waybill and the Consolidated Cargo Manifest Report; and (5) the House Air Waybill and the Consolidated Cargo Manifest Report are incorporated into the Master Air Waybill under the air cargo industry standard and TACT.

The Court now turns to the question of whether Defendants are entitled to partial summary judgment limiting their liability under the Warsaw Convention.

### C. Defendants Virgin Atlantic and Japan Airlines are entitled to partial summary judgment under the law

In order for Defendants Virgin Atlantic and Japan Airlines to prevail on their Motion for Partial Summary Judgment, the Court must find that, viewing the evidence most favorably to Plaintiff, Defendants are clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987). Since this matter requires the Court to apply the law to undisputed facts, it is a question of mixed law and fact. A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). "When a mixed question of fact and law involves undisputed underlying facts, summary judgment is appropriately granted." *Han v. Mobil Oil Corp.,* 73 F.3d 872, 874 (9th Cir.1995). After considering the require-

ments of Article 8(g), (h) and (I) and the contents of the Master Air Waybill, the Court finds that Defendants are clearly entitled to prevail as a matter of law.

■ Article 8(g) requires that the air waybill include a description of "the nature of the goods." Courts have declined to specify exactly what language is necessary on the air waybill to satisfy Article 8's requirements. It is well established that the Warsaw Convention does not require the waybill to recite "an incantation containing the magic words set out in the Article 8 particulars." *Martin Marietta Corp. v. Harper Group,* 950 F.Supp. 1250, 1253 (S.D.N.Y.1997); *see also Tokio Marine & Fire Ins. Co. v. United Air Lines,* 933 F.Supp. 1527, 1532 (C.D.Cal.1996) (quoting *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.,* 983 F.2d 437, 440 (2nd Cir.1993) for the proposition that "Article 9 only requires that the waybill contain the ... particular[s]; it does not address the problem of slight deviations in the language.").

Defendants argue that the inclusion of the term "CONSOL" on the Master Air Waybill is a "customary way of identifying goods that are consolidated and shipped in the air cargo industry." (See Declaration of Eric Taylor at p. 1). Defendants further argue that even though the term "CONSOL" may be insufficient standing alone, the Master Air Waybill incorporates the more detailed descriptions of the shipped goods included on the House Air Waybill and the Consolidated Cargo Manifest, which traveled with the shipment from Shannon, Ireland to its final destination. (See Defendants' Reply to Plaintiff's Opposition at pp. 9–10). Defendants argue that, taken as a whole, the three documents provide more than enough information as to the nature of the goods to satisfy the requirement of subsection (g). (See Defendants' Reply to Plaintiff's Opposition at p. 10).

■ Plaintiff argues that "[t]he nature of the goods is nowhere indicated." (See

Plaintiff's Opposition at p. 7). In the alternative, Plaintiff asserts that the use of the term "CONSOL" on the Master Air Waybill is not a sufficient description of the nature of goods to satisfy the requirement of subsection (g). (See Plaintiff's Opposition at p. 8).

Since the Court found above that there is no dispute as to the material fact that outside documents may be incorporated into the Master Air Waybill, the Court will consider the contents of the House Air Waybill and the Consolidated Cargo Manifest Report along with the Master Air Waybill in its determination of whether it meets the requirement of subsection (g). First, the Court finds that the Master Air Waybill includes the term "CONSOL" in the space marked "Nature and Quantity of Goods." (See Exhibit A of Plaintiff's Opposition). Furthermore, the Master Air Waybill contains the following language in the space marked "Handling Information": "DOC'S POUCH ATT'D." (See Exhibit A of Plaintiff's Opposition). This language indicates that "a document pouch was attached to the [Master Air Waybill] and traveled with the shipment when it was carried from Shannon to San Francisco." (Declaration of Eric Taylor at p. 2, attached to Defendant's Reply to Plaintiff's Opposition).

The document pouch contained the Consolidated Cargo Manifest Report and the House Air Waybill. (See Declaration of Eric Taylor at p. 2). The Court finds that the plain language of the House Air Waybill, which includes the term "COMP EQUIP" in the space designated for "nature of goods," clearly demonstrates that the shipment was composed of computer equipment. (See Exhibit B of Plaintiff's Opposition). Moreover, the Consolidated Cargo Manifest Report breaks the shipment down even further and describes the nature of each specific part in the space marked "nature of goods." The Consolidated Cargo Manifest contains more specific descriptions of each piece included in the shipment by referring to each part in the space marked "Nature of Goods" with one of the following terms: "COMPACT

DISCS," "GLASSWARE," "LAN EQ," "AUDIOEQUIP," "OIL SAMPLE," "INTER CIRC," "MACH PARTS," "COMPUTER PARTS," "CATERING GOODS" and "CONSOL". (See Exhibits F & G of Plaintiff's Opposition).

In light of the fact that neither the Warsaw Convention, nor the case law, dictate how the carrier must describe the nature of goods on the air waybill, the Court finds that the Master Air Waybill, combined with the House Air Waybill and the Consolidated Cargo Manifest Report, contains descriptions of sufficient detail of the nature of the goods included in the shipment to satisfy Article 8(g). The descriptions of the nature of goods in the three documents not only indicate that the shipment was composed of computer equipment, rather they also show what specific types of computer equipment were included in the shipment. The Court is satisfied that the details provided in the Master Air Waybill, the House Air Waybill and the Consolidated Manifest Report, even when viewing them most favorably to Plaintiff, as the Court is required to do under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Eisenberg v. Insurance Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987), clearly describe the nature of goods. Therefore, the only possible conclusion under the law is that the Master Air Waybill satisfies Article 8(g)'s requirement.

■ The Court will now consider the requirements of Article 8(h) and (I) together because courts have subjected both subsections to an analysis that is different from that applied to the other particulars. *See Tokio Marine & Fire Ins. Co. v. United Air Lines, Inc.*, 933 F.Supp. 1527, 1531 (C.D.Ca.1996); *Brink's Limited v. South African Airways*, 93 F.3d 1022, 1033 (2nd Cir.1996); *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2nd Cir.1993); *Exim Indus. v. Pan Am. World Airways*, 754 F.2d 106, 108 (2nd Cir.1985). Article 8(h) requires that the air waybill include "the number of pack-

ages, the method of packing, and the particular marks of numbers upon them." Article 8(I) requires that the air waybill include "the number, the weight, the quantity, the volume, or dimensions of the goods." Courts have interpreted subsections (h) and (I) liberally because of their ambiguity. It is well established that Article 9 deprives the carrier of limited liability protection only if the omitted particular required in subsections (h) or (I) is of "commercial significance." *See Tokio Marine*, 933 F.Supp. at 1531; *Brink's*, 93 F.3d at 1033; *Maritime*, 983 F.2d at 440; *Exim*, 754 F.2d at 108.

Defendants argue that the Master Air Waybill meets the requirements of both subsections (h) and (I). Defendants assert that the Master Air Waybill "clearly indicates that there were (9) pieces in the consignment," which satisfies subsection (h). (See Defendants' Reply to Plaintiff's Opposition at p. 11). Defendants further contend that the Master Air Waybill meets the requirements of subsection (I) because it "clearly indicates that the weight of the cargo is 3,805 kilograms." (See Defendants' Reply to Plaintiff's Opposition at p. 11). Finally, Defendants argue that any information missing from subsections (h) and (I) is not commercially significant, as required under *Tokio Marine & Fire Ins. Co. v. United Air Lines*, 933 F.Supp. 1527, 1531, *Brink's Limited v. South African Airways*, 93 F.3d 1022, 1033, *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 and *Exim Indus. v. Pan Am. World Airways*, 754 F.2d 106, 108. (See Defendants' Reply to Plaintiff's Opposition at p. 11).

Plaintiff argues that none of the information required by subsections (h) and (I) is included in the Master Air Waybill except for the weight of the nine pieces of the shipment. (See Plaintiff's Opposition at p. 8).

Since the Court has already established that the House Air Waybill and the Consolidated Cargo Manifest Report are incorporated into the Master Air Waybill, the Court considers them along with the information provided on the Master Air Waybill in its determination of whether subsections (h) and (I) have been satisfied. The Master Air Waybill indicates that there were 9 packages of a gross weight of 3,805 kilograms. (See Exhibit A of Plaintiff's Opposition). The House Air Waybill indicates that there were 8 packages of a gross weight of 3,754 kilograms. (See Exhibit B of Plaintiff's Opposition). Finally, the Consolidated Cargo Manifest Report further breaks down the shipment and shows the individual weight, volume and number of each part. (See Exhibits F & G of Plaintiff's Opposition).

█ The Court finds that all of the information required by subsections (h) and (I) is present either in the Master Air Waybill, House Air Waybill or the Consolidated Cargo Manifest Report, with the possible exception of the method of packing required by subsection (h). Plaintiff has not suggested, however, why such an omission would be commercially significant. Furthermore, the Court can find no reason why the omission of the method of packing would be commercially significant. Since this case only involves a lost package, there is no reason why the method of packing would have any bearing on the outcome, as it might if Plaintiff were seeking reimbursement for goods damaged during shipment. Accordingly, the Court finds that Defendants Virgin Atlantic and Japan Airlines complied with Article 8(h) and (I).

In conclusion, the Court finds that the information included on Defendants' Master Air Waybill, House Air Waybill and Consolidated Cargo Manifest Report meets the requirements of Article 8, particularly subsections (g), (h) and (I). Therefore, the Court finds that Article 22(2) of the Warsaw Convention limits Defendants' liability to $20 per kilogram.

█ The Court cannot, however, specify the amount of damages at this time. Defendants argue that the weight of the lost cargo is 247 kilograms, which limits their

liability to a total loss of $4,940 under Article 22(2). Defendants support their argument that the lost cargo weighed 247 kilograms with Dimerco Express Corporation's written claim to Defendants Virgin Atlantic and Japan Airlines. (See Ginger Declaration, Exhibit D, attached to Defendants' Motion). Defendants argue that the written claim indicates that the lost cargo weighed 247 kilograms. (See Defendants' Motion at p. 7). Plaintiff does not dispute this.

The Court, however, cannot discern whether 247 kilograms is the correct weight. The Court finds that Dimerco's written claim is not dispositive of the weight of the missing cargo. The written claim appears to indicate the characteristics of a skid that arrived in San Francisco, CA with the rest of the shipment. It states that one skid arrived in San Francisco, CA from Shannon, Ireland on June 23, 1997 and that "24 of 40 cartons (576 drives) were missing from that very skid." (See Ginger Declaration, Exhibit D, attached to Defendants' Motion). The written claim also shows under a column labeled "WT" that something weighed 247 kilograms. (See Ginger Declaration, Exhibit D, attached to Defendants' Motion). The written claim does not specify, however, whether the 247 kilograms pertains to the weight of the 24 missing cartons or to the 16 cartons which remained on the skid after arrival in San Francisco.

The Court finds that there are several possibilities to which the 247 kilograms refers: (1) the weight of the full skid prior to shipment, (2) the skid's weight after the 24 cartons had already been lost, or (3) the weight of the lost cargo. The Court finds that the first two interpretations are more plausible because the weight is located next to the quantity column on the document, which refers to "1 skid." The first two interpretations, however, do not indicate the actual weight of the cargo lost, which is what is measured for the purpose of limiting liability under Article 22(2) of the Warsaw Convention. Therefore, the Court cannot discern the amount of Defendants' liability.

Accordingly, the Court declines to specify the weight of the lost cargo for the purposes of limiting Defendants' liability to certain amount because the actual weight is unclear. Defendants have failed to establish conclusively to the Court the actual weight.

### III. Applicability of the Warsaw Convention's Limited Liability Provision to Ogden

Plaintiff argues that Defendant Ogden, a sub-agent of Defendant Japan Airlines, is not covered by the provisions of the Warsaw Convention. On June 23, 2000, Defendant Ogden filed a request with the Court that its Motion for Partial Summary Judgment be taken off the calendar because of a pending settlement between Defendant Ogden and Plaintiff. The Court granted Defendant Ogden's request on June 28, 2000, and, in light of the parties settlement, the Court deems the applicability of the Warsaw Convention to Defendant Ogden a moot issue.

### IV. Plaintiff's Punitive Damage Claim Against Japan Airlines

▮ Defendants' Motion for Partial Summary Judgment also seeks to have the Court dismiss Plaintiff's punitive damage claim against Defendant Japan Airlines as a matter of law. Defendants argue that courts have never allowed recovery of punitive damages under the Warsaw Convention, and because the Warsaw Convention governs this case, punitive damages are not recoverable here. (See Defendants' Motion at p. 7–8). Plaintiff does not dispute Defendants' argument.

The Court has already established that this case is governed by the Warsaw Convention and that Defendant Japan Airlines is entitled to limited liability under Article 22(2). The Court agrees with Defendants' argument that punitive damages are clearly not recoverable under the Warsaw Convention. *See In re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 928 F.2d 1267, 1288 (2d. Cir.1991). Further-

more, the Court's holding that Defendant Japan Airlines is entitled to limited liability precludes the possibility of punitive damages. Therefore, the Court finds that Defendant Japan Airlines is not subject to punitive damages.

### CONCLUSION

Based upon the aforementioned analysis, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' Motion for Partial Summary Judgment and ORDERS that (1) Defendants Virgin Atlantic and Japan Airlines' are permitted to avail themselves of the limited liability provision of Article 22(2) of the Warsaw Convention; (2) Plaintiff's claim that Defendant Ogden is not covered by the Warsaw Convention is moot; and (3) Defendant Japan Airlines is not subject to punitive damages.

IT IS SO ORDERED.